The AIRLINES STEWARDS AND STEWARDESSES, ASSOCIATION LOCAL 550, TRANSPORT WORKERS UNION OF AMERICA, AFL–CIO, Plaintiff,

v.

CARIBBEAN ATLANTIC AIRLINES, INC., Defendant.

No. Civ. 585–68.

United States District Court
D. Puerto Rico.

Dec. 9, 1968.

See also D.C., 289 F.Supp. 841.

Francisco Aponte-Perez, San Juan, P. R., Allen Greenfield and Steven Rose, Miami, Fla., for plaintiff.

Juan R. Torruella, San Juan, P. R., for defendant.

PERMANENT INJUNCTION

CANCIO, Chief Judge.

This cause came on to be heard for final hearing upon the Plaintiff's application for a permanent injunction in accordance with the Plaintiff's verified complaint requesting the issuance of a temporary restraining order, thereafter a preliminary injunction and finally a permanent injunction, and upon the answer filed by the Defendant, and the Court having considered the pleadings filed herein, together with the evidence submitted by the parties, the testimony of the witnesses produced by the parties in open court, and the arguments of counsel, and the Court being otherwise fully advised in the premises, the Court finds:

1. The Court has jurisdiction over the subject matter and the parties herein, pursuant to U.S.C. Title 28 Sections 1331 and 1337 and the Railway Labor Act, 45 U.S.C. Sections 151–188.

2. The Plaintiff is a labor organization with its principal office located in Chicago, Illinois and a local union of the Transport Workers Union of America AFL-CIO, which represents the stewardesses employed by the Defendant.

3. The Defendant, commonly known as CARIBAIR, is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal office at International Airport, Isla Verde, Puerto Rico, and is a common carrier by air engaged in interstate commerce.

4. A collective bargaining agreement is now in effect between the Plaintiff and the Defendant, entered into in accordance with the provisions of the Railway Labor Act. This agreement governs, among other items, rates of pay, hours and working conditions. See Plaintiff's Exhibit 1.

5. The collective bargaining agreement incorporates a Flight Stewardesses Scheduling Policy Manual which provides for the method and manner of scheduling open time flights. "Open time" is defined in Paragraph G (Exhibit 1, Page 56) of said Manual as "all flying which is not included in a bid run". "Bid Run" is defined in Section 2 (f) (page 3) of the contract as a "monthly assignment of flying." Paragraph H of the manual (page 56) provides that "open time shall be offered in order of seniority to Flight Stewardesses", "and by virtue of Paragraph #4G (page 59) of said manual, "open time shall be offered to stand-by in order of seniority. Such open time flights shall be offered and posted on the daily schedule at least thirty (30) minutes before the scheduled departure of the flight." The term "stand-by duty" is defined in Section 2(i) (page 3) to mean the "time during which the Company requires a flight stewardess to be available at the airport. Such stand-by duty will commence and end at the times designated by the Company."

6. The Introduction to the Flight Stewardess Scheduling Policy Manual (page 55), provides as follows: "Changes may be made with the mutual consent of ALSSA and the Company. The purpose is to provide a systematic and equitable method of scheduling Flight Stewardesses." Section 26(J) (page 32) of the contract reads:

"The Stewardess Scheduling Manual shall be considered part of this Agreement. Changes or amendments may be made to the Stewardess Scheduling Manual at any time by written mutual agreement between the Airline Stewards and Stewardesses Association and the Company designated representative."

7. Prior to September 1, 1968, the practice and procedure observed and followed by the defendant in scheduling open time was to offer it to stewardesses on stand-by duty on an individual flight basis, according to seniority, and not on a group or package basis, and at least thirty (30) minutes prior to departure of the flight. This practice followed and was in conformity with the contract and the manual. Starting on September 1, 1968, the Defendant changed that practice and procedure by offering open time on a group or package basis instead of on an individual ba-

sis. The end result was that a senior stewardess was unable to take individual flights if, as was the practice prevailing before September 1, 1968, she refused to take the whole pattern of flights. This practice of a take it or leave it basis affected adversely the voluntary and optional choice that the stewardesses had to select individual flights at least thirty minutes before the departure of the flight.

8. The procedure for the scheduling of open time flights as promulgated by the Defendant beginning September 1, 1968 was a unilateral change of a working condition contrary to the terms and conditions of the collective bargaining agreement and the Railway Labor Act.

9. Section 2, paragraph seventh, of the Railway Labor Act provides "no carrier * * * shall change * * * working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in Section 6 of this Act."

10. The Defendant has not abided by the terms and conditions of the contract in regard to attempting to effectuate the proposed change nor has it complied with the provisions of section 6 of the Railway Labor Act. Contrary to the provisions of the collective bargaining agreement and section 6 of the Railway Labor Act, the Defendant did unilaterally, and over the strenuous objections of the Plaintiff, change the working conditions in regard to the scheduling of open time flights as previously described herein in paragraph 8, above.

11. The Court has the inherent power and duty to maintain the integrity of collective bargaining agreements and to fulfill the spirit and intent of the Railway Labor Act by effectuating and maintaining the status quo between the parties and to prevent any unilateral change of working conditions pending the compliance by the Defendant with the provisions of the collective bargaining agreement and the Railway Labor

Act, if the Defendant is to attempt to negotiate a change.

12. An arbitrator, pursuant to the terms and conditions of the collective bargaining agreement, would not have jurisdiction over proposed changes in working conditions covered by the existing agreement. (Plaintiff's Exhibit 1) (paragraph (e), page 49).

13. The unilateral change in the working conditions by the Defendant has resulted in a loss of seniority privileges to the stewardesses. The loss of seniority privileges extends beyond a mere monetary loss, but even such monetary losses as do exist would be impossible to determine with any degree of certainty or accuracy and therefore the injury to the stewardesses is irreparable and substantial.

14. The Defendant has admitted that the method of assigning open time, which this Court finds to be a change in working conditions, was still in effect as of the date of the final hearing which was held on November 26, 1968.

15. The Court has heard extensive testimony from witnesses for both the Plaintiff and the Defendant, both in the hearing of September 16, 1968 and in the hearing of November 26, 1968, and the Court finds, after having had the opportunity to observe the demeanor of the witnesses, their candor and the interest of the witnesses in the outcome of the litigation, that the overwhelming weight of credibility lies with the Plaintiff.

Based upon the above findings of fact, the Court hereby makes the following conclusions:

1. This Court has jurisdiction over the subject matter of this action under U.S. Title 28, Sections 1331 and 1337, and the Railway Labor Act 45 U.S.C. Sections 151–188, and over the parties hereto.

2. The policy and basic philosophy of the Railway Labor Act is to

give full force to the process of collective bargaining for the orderly instrumentation of changes in rates of pay, hours, and working conditions as embodied in agreements between the parties. The Act fixes a procedure for notice and bargaining on the subject of such proposed changes. It also imposes upon the carrier the duty to refrain from altering the rates of pay, hours, or working conditions until the controversy has been finally resolved through the procedures established in the Act. See Section 2, Paragraph Seventh and Section 6 of the Act.

3. The existing collective bargaining agreement between the parties embodies and incorporates the same policy of mutual bargaining, consent, and the maintenance of the status quo regarding changes in the subject matter of rates of pay, hours and working conditions. The introduction of the Flight Stewardesses Scheduling Policy Manual (page 55 of P's Exhibit 1) commands that change to said manual are to be made only with the mutual consent of the parties. The same policy is reiterated and reinforced in Section 26(j) of the contract (page 32, Plaintiff's, Exhibit 1), providing that any changes or amendments to the Stewardesses Scheduling Policy Manual may be made at any time with the mutual written agreement of the parties. And by virtue of paragraph (e) of that part of the contract dealing with the System Board of Adjustment (page 49 of Plaintiff's Exhibit 1), its jurisdiction is restricted from extending to proposed changes in hours of employment, rates of compensation or working conditions covered by the existing agreement.

4. The change introduced by the Defendant in scheduling open time flights, which has continued to date, constituted a radical departure from the policy outlined in the Flight Stewardesses Scheduling Policy Manual and thus constituted a change in the working conditions with regard to said open time flights. The change introduced by the Defendant amounts to a change or amendment to said Flight Stewardesses Scheduling Policy Manual without the contract requirements of mutual written agreement or the requirements for change pursuant to the Railway Labor Act.

5. Plaintiff prays for injunctive relief ordering the carrier to maintain the *status quo ante* regarding the open time flights until the observance of the contractual or legal requirements of bargaining, negotiation and agreement. The Court concludes that it has jurisdiction to issue such injunctive relief to protect the integrity of the existing agreement and to provide for the orderly resolution of changes and amendments in working conditions through the process of bargaining and negotiation and, if this fails, through the procedures established in the Railway Labor Act and in the contract. The authority of the district courts to provide for the restoration of status quo situations has been upheld and sustained as inherent to the equitable powers of the Court, if based on an informed and reasonable discretion. Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R.R. Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960); Westchester Lodge 2186, etc. v. Railway Express Agency, Inc., 329 F.2d 748 (2 Cir. 1964); Railroad Yardmasters of America v. St. Louis-San Francisco Ry. Co., D. C., 231 F. Supp. 986, 987. See Jack L. Kroner, Interim Injunctive Relief Under the Railway Labor Act; Some Problems and Suggestions, 18 NYU Conference on Labor 179.

6. The Court concludes that the controversy in the present case involves a violation of the duty to bargain over changes or amendments to existing working conditions and is not a grievance subject to the grievance procedure of the contract thereby requiring prior exhaustion of contractual remedies.

7. Although the Defendant has tried to raise the issue of economic loss if an order for a permanent injunction is granted the Court concludes that

any economic loss on the part of the Defendant is not a decisive factor to be considered in this case, since the Court is prevented from rewriting the collective bargaining agreement in effect between the parties, nor the Court can release the Defendant of what it considers a bad bargain. Both parties are bound by the terms of said contract until its termination, or until a change is introduced by mutual consent, or through the Railway Labor Act, notwithstanding the economic considerations. In this respect, the Court will maintain the integrity of the collective bargaining agreement, and will reject any change on the status quo predicated on economic reasons.

8. The Court does hereby reaffirm its Order and Decision dated September 20, 1968.

9. In view of the entry by this Court of this permanent injunction, this Court does hereby vacate and set aside the stay of the temporary injunction previously issued by its order dated September 27, 1968.

10. The bond given by the Plaintiff and heretofore filed in this cause on the 12th day of September, 1968, in the principal sum of $10,000.00 is hereby cancelled and the principals and the surety thereunder are hereby discharged from any further liability.

11. The Plaintiff is entitled to a permanent injunction restraining and enjoining the Defendant, its officers, agents, representatives, attorneys or any other person acting in its representative and official capacity, or its legal successors, from changing the manner of scheduling open time flights.

12. The method of scheduling open time flights shall be on the basis of seniority, as outlined in the contract, each flight or trip to be offered on an individual flight basis at least thirty (30) minutes before departure of the individual flight or trip. The Defendant shall not offer or assign open time flights on a group or package basis.

13. This Permanent Injunction shall be effective forthwith and the Defendant shall comply herewith by no later than 12:01 A.M. on the 14th day of December, 1968.

14. This Court retains jurisdiction of this cause in order to consider the Plaintiff's motion to tax costs which may hereinafter be filed.