Peter CARBONE et al., Plaintiffs,

v.

Robert W. MESERVE et al., Defendants.

Civ. A. No. 79–2386–G.

United States District Court,
D. Massachusetts.

Oct. 17, 1980.

James F. Freeley, Jr., Feeney & Freeley, Boston, Mass., for plaintiffs.

Sidney Weinberg, Boston, Mass., for defendants.

## FURTHER FINDINGS AND CONCLUSIONS SUPPORTING ORDER FOR PRELIMINARY INJUNCTION

GARRITY, District Judge.

This action was brought by the plaintiff United Transportation Union (UTU) to enjoin the defendant Boston and Maine Corporation (B & M) from unilaterally merging its crew dispatching facility at Mechanicville, New York, into the facility of East Deerfield, Massachusetts, in violation of the Railway Labor Act, 45 U.S.C. § 152 Seventh (1976). Plaintiff's application for a temporary restraining order was denied on November 30, 1979. Hearings were held on plaintiff's motion for a preliminary injunction on February 29 and March 5, 1980, after which the court found that the defendant, B & M, had changed the rules and working conditions of its employees as embodied in an agreement dated November 24, 1970, without resort to the procedures mandated by 45 U.S.C. § 156 (1976). The court's order entered March 5 was predicated on its findings and conclusions stated in open court at the conclusion of the hearing, including a ruling that a "major dispute" existed under the Railway Labor Act. The court denied B & M's motion to dismiss, and ordered a preliminary injunction to restore the status quo at the Mechanicville facility as it functioned on April 6, 1979. The injunction was conditioned on the parties' submission of written briefs and affidavits on the issue of the necessity and amount of bond under Rule 65(c), Fed.R.Civ.P. On April 4, 1980 the court ordered that plaintiffs post bond in the amount of $1,000; a bond in this amount was filed on July 10, and approved July 11, 1980. We withheld entry of the order, however, pending a further hearing on September 23, 1980 of defendants' motions to amend the decree and to reconsider our denial of their motion to dismiss. We now reaffirm our previous rulings and, for the reasons set forth below, order entry of a preliminary injunction in favor of plaintiffs, and deny defendants' renewed motion to dismiss and motion to amend the injunctive decree.

The present dispute arose out of B & M's action on April 6, 1979, removing the crew dispatchers and "crew board" from the railroad's facility at Mechanicville, New York, to the facility at East Deerfield, Massachusetts. UTU claims that this action of B & M was taken in plain violation of longstanding agreements between the parties. Specifically an agreement between UTU and B & M was reached in settlement of a "major dispute" before the National Mediation Board, Case No. E–172, on February 11, 1959, concerning the maintenance of crew dispatching facilities at particular work locations, identified as "Item 21." It provided:

Item 21. In disposition of this item, it is understood Crew Dispatchers will not be withdrawn from any terminal where employed as of the date of this letter without consultation in advance with the General Chairman. This will not apply to changes in or discontinuance of individual assignments.

Eleven years later, in a letter of agreement dated November 24, 1970, the former General Chairman of the UTU, J. L. Scanlan, and the former Assistant Director–Labor Relations for B & M, D. F. Ellingwood, modified Item 21 as follows:

This refers to the settlement of Item 21 in National Mediation Board Case Number E–172.

For the future it is understood crew dispatching facilities will not be further merged without prior approval from this Committee, with the exception of the crew dispatching facilities at Rigby and Westboro, which can be merged at the Carrier's option with the present crew dispatching facilities at Mystic Junction.

In other words, the crew dispatching facilities on the Boston and Maine property would remain as separate facilities, as follows:

Mechanicville
East Deerfield
Passenger Crew Dispatchers at Boston
Mystic Junction Crew Dispatchers

Subsequent to this agreement, B & M merged the Westboro crew dispatchers with the East Deerfield crew dispatchers and likewise Rigby with Mystic Junction in Somerville, Massachusetts, in accordance with the carrier's option under this agreement.

On December 3, 1976 B & M notified the UTU by letter of its desire to effect a "Consolidation and Combining of Crew Dispatchers Positions and Work" under the informal settlement procedures outlined in the Act, 45 U.S.C. § 152 First and Second (1976), and recognized that Item 21 and the November 24, 1970 agreement controlled the matter. UTU responded on December 10 that any proposed merger of crew dispatchers created a major dispute under Section 6 of the Act. B & M replied by letter dated December 16, 1976 that "If we are still unsuccessful in our attempt to secure your Organization's approval of this merger, we, of course, may have to resort to the provisions of Section 6 of the Act or some other legal avenue to effect the desired changes."

On January 3, 1977 the UTU sent B & M, as well as other railroads, a Section 6 notice of intended changes in the existing agreement affecting rates of pay, rules and working conditions. As part of the general discussion that ensued from the UTU's Section 6 notice, B & M countered with its own Section 6 notice on October 3, 1978, and attached its own proposed changes in the existing agreement. One of those changes was "Attachment A–11", which proposed to: "Establish a rule to provide for: Eliminating any rule or agreement which imposes any restriction on consolidating of crew dispatching facilities." Discussion of the proposed changes, including the proposed elimination of the November 24, 1970 agreement, continued between B & M and UTU through March of 1979.

On April 6, 1979, however, B & M moved the crew dispatchers from Mechanicville, New York, to East Deerfield without the approval of the UTU. Four crew dispatchers had been employed at the Mechanicville facility on a 24–hour basis. These dispatchers assigned work to employees of B & M residing in the Mechanicville area in accord-

ance with rules regarding seniority rights and other standards. The crew dispatchers also serviced the "spare board" for the Mechanicville area, T–147, which lists jobs and job vacancies on an up–to–the–minute basis. The current spare board at Mechanicville was always available for inspection by UTU Local 470 members, as well as the spare boards for the day before and the next day. The local UTU members constantly relied upon a personal relationship with the dispatchers and upon the currency and accuracy of the spare board to ascertain the availability of work, to protect their seniority rights, and to avoid penalties for the failure to accept a work assignment within one hour of the scheduled job.

In place of the crew dispatchers removed from Mechanicville, the B & M opened a toll free telephone number to the crew dispatching facility at East Deerfield, where the T–147 spare board for Mechanicville had been relocated. About one week after April 6, B & M installed a "Rapifax" tele-copying machine at Mechanicville. This machine duplicated the actual handwriting of the crew dispatchers at East Deerfield, and was scheduled to reproduce the spare board at Mechanicville three to four times a day. However, numerous problems have arisen under the new system installed by the B & M, including frequent difficulty reaching the crew dispatchers in East Deerfield, illegibility of the rapifax copies of the spare board, and mechanical breakdowns of the rapifax machine.

B & M and UTU continued to discuss the Attachment A–11 proposal after B & M's action of April 6. At the union's request, the negotiations concerning the mutual Section 6 notices were referred to the National Mediation Board in June of 1979, and assigned Case No. A–10467. Several discussions were held in August 1979 in the presence of the federal mediators, without resolution of outstanding issues. B & M withdrew the merger proposal, Attachment A–11, from the Mediation Board on August 27, 1979. The UTU was not told of B & M's withdrawal until Mediator B. Meredith orally informed the union on September 25, 1979. The next day the UTU Local 470

union members at Mechanicville took a strike vote to refrain from work until B & M returned the crew dispatchers to Mechanicville. Tabulation of the union's votes was completed in early October, reflecting 17 in favor, 1 opposed, and 1 abstention. The UTU advised B & M of its position that they would stop work unless the dispatchers were returned by Saturday, October 27, 1979. Throughout, the UTU had addressed numerous complaints to the B & M. The UTU filed a complaint in this court for a temporary restraining order and preliminary injunction on November 30, 1979.

On the basis of these facts, and the testimony heard February 29 and March 5, 1980, we find that the action of the railroad involves a change of rules and working conditions in violation of 45 U.S.C. §§ 152 Seventh and 156 (1976). Hence, B & M's contested action involves a major dispute, since there is no doubt that the existing agreement of November 24, 1970 precludes the merger of the Mechanicville and East Deerfield crew dispatching facilities. *See Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945); *Airlines Stewards & Stewardesses Ass'n v. Caribbean Atlantic Airlines*, 1 Cir., 1969, 412 F.2d 289, 291. We explicitly find that the railroad's "contractual defense [is] so obviously insubstantial as to be an attempt to circumvent § 6 of the Railway Labor Act." *Airline Stewards & Stewardesses Ass'n, supra* at 291. First, in no way can it be understood that B & M's transfer of crew dispatchers and the T–147 spare board to East Deerfield from Mechanicville is anything but a merger of those facilities in violation of the November 24, 1970 agreement. Put quite simply, there is no longer a "crew dispatching facility" at Mechanicville since no crew dispatching is done there. Though a "rapifax" machine was installed at Mechanicville, it is often outdated, illegible, inoperable and an altogether inadequate substitute for the presence of the crew dispatchers and the official T–147 spare board. The "dispatching" is in fact done at East Deerfield, some 100 miles away from Mechanicville, where the Local

**890**

470 union members must call to discover the availability of vacancies and respond to assignments. Failure to keep in constant and accurate contact with the crew dispatchers can result in penalties to the union members by missing an available assignment and consequently being removed from the list of available employees for a period of 16 hours before being returned to the bottom of the waiting list. As in *United Transportation Union v. Penn. Central Co.*, 6 Cir., 1971, 443 F.2d 131, the railroad's instalment of the "rapifax" machine is a unilateral change in working conditions prohibited by the Railway Labor Act.

Second, we find that the B & M's contractual defense that a "crew dispatching facility" remains in Mechanicville is simply an attempt to circumvent the Section 6 procedures required by the Act. The issue between these parties of the merger of crew dispatching facilities has been historically a subject of negotiation before the National Mediation Board. In fact, the merger issue was before the Mediation Board in this case until B & M withdrew Attachment A–11 on August 27, 1979, after it had unilaterally effected the merger of the Mechanicville and East Deerfield facilities on April 6.

In view of the foregoing considerations, we are compelled to issue an injunction to restore the *status quo* of April 6, 1979 at the Mechanicville facility until the settlement procedures of 45 U.S.C. § 156 (1976) have been complied with. *Detroit & Toledo Shore Line Railroad Co. v. United Transportation Union*, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969); *UTU v. Burlington Northern, Inc.*, 8 Cir., 1972, 458 F.2d 354, 357. The defendants' motions for reconsideration of dismissal and amendment of the preliminary injunction are denied.