**Arnold L. DAVIS, Plaintiff,**

v.

**David MATHEWS, Defendant.**

**Civ. No. S–76–325 TJM.**

United States District Court,
E. D. California.

Jan. 13, 1978.
Opinion after Briefing March 20, 1978.
On Motion for Reconsideration
May 17, 1978.

Herman Sillas, U. S. Atty., Richard W. Nichols, Chief Asst. U. S. Atty., Sacramento, Cal., for defendant.

Frank A. Ury, Vallejo, Cal., for plaintiff.

MEMORANDUM

MacBRIDE, Chief Judge.

This complaint for review of decisions by the Appeals Council of the Social Security Administration and of the Administrative Law Judge denying plaintiff's application for disability benefits was filed on June 14, 1976. Plaintiff moved for remand to the Secretary of HEW and the Social Security

**310**

Administration on January 18, 1977, for further hearings on plaintiff's disability, his eligibility for benefits and the validity and propriety of the termination of his benefits. Defendant made a cross motion for summary judgment on February 8, 1977. On February 22, 1977, pursuant to 28 U.S.C. § 631 *et seq.*, this court referred both motions to Magistrate Esther Mix for hearing. On July 27, 1977, Magistrate Mix filed Proposed Findings and Recommendations, recommending that defendant's motion for summary judgment be granted and plaintiff's motion for remand be denied. Plaintiff filed objections to the Proposed Findings and Recommendations on August 8, 1977.

Review of the magistrate's action is governed by 28 U.S.C. § 636(b)(1)(C) which provides in part:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

This court must now undertake de novo review of the portions of the magistrate's findings and recommendations to which plaintiff has objected. Plaintiff urges that the Administrative Law Judge abused his discretion in permitting an "amateur" to testify as a vocational expert and that the magistrate erred in finding that there was no abuse of discretion. The testimony at issue was that plaintiff was qualified to perform work which existed in significant numbers in the region where plaintiff lives or in several regions of the country. If the plaintiff is, in fact, qualified to perform such work, then under 42 U.S.C. § 423(d)(2)(A), plaintiff is not disabled.

(1) Background

Plaintiff applied for disability benefits under 42 U.S.C. § 423 and for a period of disability under 42 U.S.C. § 416(i) on June 20, 1973. Section 416(i)(1) provides that the provisions of section 423(d)(2)(A) and (3) through (5) shall be applied to determine whether a person is under a disability for purposes of section 416(i). Section 423(d)(2)(A) provides in part:

an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence . . . "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Plaintiff testified at a hearing on June 12, 1974 before Hearing Examiner Donald S. Manion that he was born July 25, 1928 and had an eighth grade education. It appears that plaintiff was originally injured in a fall on the job in 1969; the injury to his knee required surgery and, although improved, he still suffers some impairment. In late 1972, plaintiff was injured in an automobile accident which caused contusions to his head and cervical strain. Headaches and neck pain from this accident have apparently continued to occur. Medical records in the file indicate that plaintiff is mildly retarded with an I.Q. of 76 and has suffered from a schizophrenic episode which required hospitalization in 1967.

The first decision of the Hearing Examiner on December 12, 1974 states:

while it is reasonable to infer that Mr. Davis may be precluded as a result of his complaints from again engaging in the type of construction labor which he described, it seems evident that he yet possesses the physical ability to resume work analogous to that which he pursued at the Benecia, California arsenal, viz., that

of light packaging, a vocation within his experience and mental capabilities that would not place undue stress upon those areas of his anatomy or physiology in connection with which he has continuing symptomatology.

The Hearing Examiner determined that plaintiff had

failed to furnish such evidence as would demonstrate by medically acceptable clinical and laboratory diagnostic techniques the existence in him of such a physical or mental impairment that would prevent him from engaging in all substantial gainful activity.

Plaintiff objected to the first decision of the Hearing Examiner and the Appeals Council vacated that decision on May 16, 1975. The Appeals Council decision states:

the record in this case does not contain sufficient information for a decision as to whether the claimant meets the requirements of the Act for purposes of establishing entitlement to a period of disability and to disability insurance benefits.

The Appeals Council remanded the case to the Hearing Examiner for additional evidence to be taken and for

the testimony of a vocational expert with respect to the types of work activity, if any, for which the claimant is qualified on the basis of his education, training, and work experience.

At the hearing on remand, the Hearing Examiner received in evidence a medical report on the plaintiff, a resume from Lewis G. Carpenter, Jr., and plaintiff's objection to Dr. Carpenter's testimony as a vocational expert. Dr. Carpenter had been requested to testify by the Hearing Examiner, and no other vocational expert testified. After the hearing, the Examiner accepted into evidence a letter from Dr. Lloyd Meadow, a Professor of Rehabilitation Counseling and a licensed psychologist in California.

On January 28, 1976, the Hearing Examiner decided for a second time that plaintiff was not entitled to disability benefits, based in large part on Dr. Carpenter's testimony. The decision states:

Dr. Carpenter expressed his professional expert opinion that an individual of claimant's age, education, vocational experience and impaired to the degree that Mr. Davis had been shown to be impaired could yet engage in substantial gainful activity in vegetable preparation, as a coilwinder in the electrical industries, as a hand packer, as a sorter or as an assembler.

Plaintiff sought review of this decision by the Appeals Council, renewing his objection to the use of Dr. Carpenter as a vocational expert. On May 10, 1976, the Appeals Council affirmed the decision of the Hearing Examiner.

(2) Dr. Carpenter's Qualifications

Dr. Carpenter's resume which appears in the record reveals that, as of October 29, 1970, he was a Senior Psychologist at Napa State Hospital where he had been employed since 1953. The following description of his duties in that position is in the resume:

Coordinator of industrial therapy program for hospital wide patient vocational placement and training. Development of integrated programs, maintain liaison between wards and hospital industries, devise training programs, develop training & employment opportunities with outside employers. Teaching psychiatric residents, student nurses, hospital program design and development. Consultant to special programs—Hospital improvement Project, Voc. Rehab., Dept. Mental Hygiene. Diagnosis, treatment, research.

Dr. Carpenter's testimony reveals that he had received an A.B. and M.A. in psychology from Stanford University and a PhD in psychology from the University of California. He stated that he was employed as a psychologist at "Memphis (PHONETIC) State Hospital" where he had been employed since 1950. It appears that "Memphis" is an error and that Dr. Carpenter is employed at Napa State Hospital. Dr. Carpenter stated that his duties at the hospital involved being

in charge of the ward of perhaps 50 male, and female patients who are predominantly—predominantly have limitations,

mental or emotional fashion (PHONET-IC), although they have a wide variety of physical problems as well. Directly I interview these individuals for diagnostic, and treatment purposes. I perform diagnostic, and therapeutic work with other patients throughout the hospital. I place individuals in hospital industrial settings from this ward, and from other wards. I mediate situations involving a necessity for training, vocational, and academic training for patients in the various facilities surrounding the area. This includes also on the job training for individuals who are suitable for being placed in job training outside the hospital. And also occasionally direct placement in job situations.

Until two years previously, Dr. Carpenter had been head of the industrial therapy program for the whole hospital. Dr. Carpenter defined "industrial therapy" as "patient involvement in hospital industries . . . which compare with those in a small community." These jobs include lawn and grounds work, kitchen work, janitorial work, painting, electrical and clerical work. Dr. Carpenter testified that he "[o]ccasionally, but not frequently," placed patients in jobs outside the hospital.

Prior to his employment at Napa State Hospital in 1950, Dr. Carpenter worked in two capacities for the Veterans Administration, first as a vocational advisor and then as a counselor. After that employment, he was an Instructor in Psychiatry at the University of California, San Francisco Medical School for three years. His testimony that his employment with the Napa State Hospital began in 1950 conflicts with his resume which places him at the Medical School until 1953. In any event, it appears that Dr. Carpenter had not been actively employed in vocational placement in the business community since the late 1940s.

Dr. Carpenter testified that he has been a vocational consultant for the Social Security Administration for six or eight years and that he had routinely "made inquiry as to the functional demands, both physical and mental of various types of occupations."

He defined the word "routinely" to mean monthly:

Each month I inquire of certain industries, certain areas and I'm in frequent contact with the California Department of Employment Development. I receive printed information from that department on labor trends and specific labor situations. Similarly, I receive and study surveys which are published by the Social Security Administration. I visit industrial plants and hiring settings.

Under questioning by plaintiff's attorney, Dr. Carpenter stated that perhaps 20 percent of his present job involved placing patients in hospital job settings and that he had placed approximately ten patients in jobs outside the hospital in the preceding two years.

(3) Objections to Dr. Carpenter's Testimony as an Expert

Prior to the second hearing, plaintiff objected to Dr. Carpenter's testimony as an expert on the grounds that he "is not a currently trained and qualified Vocation Expert." This objection was renewed at the hearing; plaintiff's attorney stated:

I don't believe that Dr. Carpenter at the present time is actively engaged in vocational placement and though I don't question his qualifications for what he is doing and his qualifications in the past, I do think we're entitled at this procedure when we're determining what jobs are available in the national economy that my client can do and how his mental and other disabilities fit within those limitations to have the judgment of someone who is actively involved in doing the kind of placement that in this particular case would be asking Dr. Carpenter to speculate on.

Plaintiff brought this same objection before the Appeals Council after the Hearing Examiner decided that plaintiff was not disabled within the meaning of the Act, but the Appeals Council affirmed that decision. The objection has been raised before this court. Plaintiff contends that Dr. Carpenter is a "lay witness" and an "amateur."

**(4) Judicial Review**

█ Judicial review of the administrative decision before the court is governed by 42 U.S.C. § 405(g) which provides in part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . . The court . . . may, at any time, on good cause shown, order additional evidence to be taken before the Secretary . . . .

Under this standard, this court must deem the findings of fact concerning Dr. Carpenter's qualifications conclusive if those findings are supported by substantial evidence, looking to the record as a whole. The same substantial evidence test applies to the inferences and conclusions that may reasonably be drawn from the evidence. If there is conflicting evidence sufficient to support more than one conclusion, the court must affirm the administrative decision. *Harvey v. Richardson*, 451 F.2d 589 (9th Cir. 1971); *Day v. Weinberger*, 522 F.2d 1154 (9th Cir. 1975).

█ Although the substantial evidence test applies in this case to the facts, for example, Dr. Carpenter's education and past and present work experience, the conclusion that a person with his background is a qualified vocational expert is a conclusion of law, subject to a much broader review by this court. The administrative interpretation of the law is entitled to great weight, but it is not binding on this court. *E. g., Conley v. Ribicoff*, 294 F.2d 190 (9th Cir. 1961); *Schoultz v. Weinberger*, 375 F.Supp. 929 (E.D.Wis.1974).

The Bureau of Hearings and Appeals of the Social Security Administration has set forth the qualifications of vocational experts in its Handbook.[1] Plaintiff cites the Handbook and urges that Dr. Carpenter does not qualify under the requirements set forth. Defendant does not dispute that the portion of the Handbook cited by plaintiff defines the qualifications of a vocational expert for purposes of this case; instead, the defendant asserts that Dr. Carpenter does qualify. The Handbook definition appears to present general guidelines rather than firm specifications; for example, it does not specify the extent of the expert's education or the number of years experience in vocational counseling. As a general proposition, it appears that Dr. Carpenter satisfies the guidelines set forth in the Handbook; the question for review is whether his lack of recent frequent involvement in vocational placement outside a hospital setting makes him unqualified to serve as a vocational expert.

---

1. Section 1–87–12 of the Handbook, issued in May 1967, provides:

    QUALIFICATIONS OF VOCATIONAL EXPERTS

    A vocational expert is selected under criteria approved by eminent specialists in the field of vocational placement. Generally, they are counseling psychologists with extensive experience in vocational placement.

    The following criteria have been considered in their selection:

    (1) Knowledge and experience in:

    (a) vocational counseling and placement, particularly, of the handicapped;

    (b) the use of occupational materials developed for use in vocational counseling such as systemized occupational information, including occupational classifications, job descriptions, definitions and job families;

    (c) the use and interpretation of psychological tests relating to occupation placement and adjustment;

    (2) Ability to observe and evaluate personal characteristics, educational and vocational background, interests, physical and mental characteristics, and to interpret them in terms of their occupational significance;

    (3) Well-rounded, up-to-date knowledge of, and experience with, industrial and occupational trends, labor market conditions and work settings; and

    (4) Knowledge of the concept of transferability of skills in terms of related job family groupings.

    The language of this section raises more questions than it answers. For example, the word "they" in the second sentence has as its antecedent the "eminent specialists" mentioned in the first sentence, yet one would expect the counseling psychologists described in the second sentence to be the vocational experts rather than the specialists who selected the criteria.

The only case cited by plaintiff is *Whitlatch v. Richardson*, 471 F.2d 655 (6th Cir. 1972), *reported in* CCH Unemployment Ins. Rep. ¶ 12,429 (Aug. 4, 1976). The precedential value of this case is open to question because it is unpublished—the Ninth Circuit forbids use of its unpublished decisions as precedent in other cases, and it may be that the Sixth Circuit does the same. Even if the case is considered as precedent, it affords plaintiff little assistance because the purported vocational expert was a university teacher "whose personal knowledge of particular jobs was limited to occasional field trips with students, [and] there was no evidence of the duration of these trips and no opportunity was afforded to observe the physical and other demands of the jobs over an extended period of time." In response to this case, defendant cites *Wilcox v. Mathews*, CCH Unemployment Ins.Rep. ¶ 14,694 (W.D.N.C. filed Mar. 24, 1976), in which the court found no merit in the argument that the vocational expert was unqualified, stating that the expert "is presently Director of Vocational Services at Charlotte Rehabilitation Hospital. This position principally involves the vocational evaluation, training, counseling, work adjustment, and job placement of physically disabled patients." Based on this evidence and the expert's undefined work experience and education, not described in the opinion, the court rejected the assertion that he was not qualified.

The *Wilcox* decision is not particularly helpful because it cites no authority for the decision that the expert was qualified. It must be noted that the expert in that case was apparently directly involved in frequent job placements, in contrast to the present case. Since the cases cited by the parties offered little guidance, this court made an effort to unearth relevant cases. That effort uncovered only *Spaulding v. Califano*, 427 F.Supp. 982, 986 n. 11 (W.D. Mo.1977), in which the court implicitly criticized the use of a witness whose expertise was "in the field of psychology and rehabilitation rather than in the vocational field." A number of cases mention the need for testimony from vocational experts, but no case on point could be found.

This court is not prepared to make a ruling on the motion based on the briefing before it. The parties should submit further briefs on the nature of the qualifications of vocational experts, the practice of the Social Security Administration in selecting experts, and the case law concerning qualification of experts either before the Social Security Administration or before other agencies. Any use of cases or practices relating to other agencies should be accompanied by an explanation why those cases or practices are suitable for analogy to this case.

Plaintiff's opening brief should be filed no later than February 6, 1978. Defendant should respond by February 27, 1978, and plaintiff's closing brief, if any, should be filed by March 6, 1978. This court will deem the matter submitted on the briefs.

IT IS SO ORDERED.

## OPINION AFTER BRIEFING

Plaintiff filed this action for review of decisions by the Appeals Council of the Social Security Administration and of the Administrative Law Judge denying his application for disability benefits. Plaintiff moved for a remand to the Social Security Administration on January 18, 1977, and defendant made a cross-motion for summary judgment on February 8, 1977. Both motions were referred to Magistrate Mix on February 22, 1977, pursuant to 28 U.S.C. § 631 *et seq.* Magistrate Mix filed proposed findings and recommendations on July 27, 1977, recommending that defendant's motion for summary judgment be granted and that plaintiff's motion for a remand be denied. Plaintiff filed objections to the proposed findings and recommendations on August 8, 1977.

Plaintiff's objection is that the magistrate found that the Administrative Law Judge did not commit an abuse of discretion in having Dr. Lewis G. Carpenter, Jr., testify as a vocational expert. Plaintiff objected to the use of Dr. Carpenter prior to his testimony at the administrative hearing,

raised that objection as the basis for his motion to remand, and renews that objection before this court. Pursuant to section 636(b)(1)(C), this court must undertake a de novo review of the portions of the magistrate's proposed findings and recommendations to which objection is raised.

On January 13, 1978, this court issued a Memorandum ordering the parties to submit further briefs on the qualifications of vocational experts who testify before the Social Security Administration in hearings on eligibility for disability benefits. As noted in that Memorandum, the two cases cited by the parties and the one case found by the court offered little, if any, guidance on the standards applicable to selection of vocational experts. The parties have submitted further briefing as requested.

Plaintiff's opening brief cited several cases concerning experts qualified to testify in court. Although these cases do tend to demonstrate that qualified experts are those with current experience in the particular field of expertise, they are of little assistance in determining the standards for vocational experts before an administrative agency such as the Social Security Administration.

Defendant responded with an affidavit by Rosalyn C. Taylor, Chief of Section VI of the Civil Actions Branch of the Bureau of Hearings and Appeals of the Social Security Administration. Ms. Taylor states that Dr. Carpenter has been under contract with the Bureau of Hearings and Appeals since May 6, 1974 as a vocational expert. The particular expert selected to testify at a disability benefits hearing is chosen on a rotational basis from a list of those experts under contract who are available in the area of the particular hearing office. Ms. Taylor's affidavit states that vocational experts must meet stringent criteria to be placed under contract with the Bureau; these criteria were established by the Bureau "after consultation with key officials of the American Personnel and Guidance Association and the American Psychological Association in June 1962 and subsequent judicial experience." The criteria quoted in the affidavit are substantially the same as those appearing in section 1–87–12 of the Handbook of the Bureau.[1] The remainder of the affidavit concerns the protections against vocational experts who might lack impartiality and the general procedures for use of experts at the hearings.

■ Although the affidavit describes the criteria as requiring that the expert have "[c]urrent and extensive experience," no additional information is offered as to the definition of these terms. This question is central to this action because plaintiff admits that Dr. Carpenter may have been qualified in the past but asserts that he has not been actively involved in vocational placement for a number of years. For this reason, plaintiff urges that Dr. Carpenter cannot now be considered a qualified vocational expert. Plaintiff points out in his reply brief that Ms. Taylor's affidavit includes no statement as to updating and review of existing contracts to eliminate those who have ceased to qualify as experts.

---

1. Ms. Taylor's affidavit states that the criteria are as follows:

A. Current and extensive experience in
1. rehabilitation counseling and placement particularly with adult handicapped clients having prior work experience.
2. the use of occupational materials developed for vocational counseling, including information about the requirements of jobs such as duties, skills, physical demands, working conditions, and occupationally significant characteristics. A working knowledge of the Dictionary of Occupational Titles, Third Edition, 1965, and its two supplements is important.

3. the utilization of the concept of transferability of skills in terms of worker traits and functions.
B. Ability to evaluate age, education and prior work experience in light of residual functional capacities.
C. Well rounded, up-to-date knowledge of, and experience with industrial and occupational trends and local labor market conditions.

Insofar as these criteria vary from those in the Handbook, this court will rely on the criteria in the affidavit. The version of the Handbook provided by the parties was issued in May 1967 and has been, apparently, supplanted by the version of the criteria offered by Ms. Taylor.

Examination of the record in this case reveals that Dr. Carpenter has not been actively involved on a regular basis in vocation placement in the business community since the late 1940s. Dr. Carpenter's position with the Napa State Hospital entails, among a number of other responsibilities, placement of certain patients in jobs within the hospital, including janitorial, kitchen and grounds work. In limited instances, Dr. Carpenter has placed patients in jobs outside the hospital; he testified that he had found such jobs for approximately ten patients in the last two years. This court recognizes the possibility that a person such as Dr. Carpenter, involved in placement of patients within the protected atmosphere of a state mental hospital, might become divorced from the realities of employment in the business community. Dr. Carpenter did testify that he was in "frequent" contact with the California Department of Employment Development and that he received the Department's printed information on labor trends and specific labor situations, as well as surveys published by the Social Security Administration. He also testified that he visited "industrial plants and hiring settings," although he offered no statement of the frequency or reasons for his visits.

The affidavit of Ms. Taylor states that the criteria for qualified vocational experts include both "[c]urrent and extensive experience in . . . rehabilitation counseling and placement particularly with adult handicapped clients having prior work experience" and "[w]ell rounded, up-to-date knowledge of, and experience with industrial and occupational trends and local labor market conditions." Based on the record, this court is of the opinion that Dr. Carpenter does not qualify as an expert with current and extensive experience and up-to-date knowledge. Although the decision of the Administrative Law Judge to use Dr. Carpenter as a vocational expert is entitled to be accorded deference in this court, that decision constituted an abuse of discretion under the circumstances of this case. Plaintiff objected to the use of Dr. Carpenter prior to his testimony, affording the Administrative Law Judge full opportunity

to select another vocational expert from the list of available experts. Plaintiff has renewed that objection before the Appeals Council and before this court. Had plaintiff failed to make a prior objection, the result in this case might well be different. Under the circumstances, however, this court orders that the matter be remanded to the Secretary for a new hearing in accordance with this decision.

IT IS SO ORDERED.

## ON MOTION FOR RECONSIDERATION

MacBRIDE, Chief Judge.

This case is before the court for decision on defendant's motion for reconsideration, pursuant to FRCP 52(b), 59(a), 59(e), 60(b)(1), and 60(b)(6). This is an action for review of decisions of Appeals Council of the Social Security Administration and of the Administrative Law Judge denying plaintiff's application for disability benefits. Plaintiff's motion for remand and defendant's motion for summary judgment were referred to Magistrate Mix pursuant to 28 U.S.C. § 631 *et seq.* The magistrate filed proposed findings and recommendations in July 1977, recommending that defendant's motion be granted and plaintiff's motion be denied. Plaintiff filed objections to the proposed findings and recommendations on August 8, 1977, and the matter came before this court for a de novo determination of the findings and recommendations to which objection was raised, pursuant to 28 U.S.C. § 636(b)(1)(C).

On January 13, 1978, after careful consideration of the briefs filed by the parties, the administrative record, and the other relevant documents, this court ordered additional briefing. Plaintiff's objection, raised initially in the administrative proceedings and renewed at each stage of the appeals process, was that the vocational expert, Dr. Lewis G. Carpenter, Jr., was not a qualified vocational expert. This court declared:

Although the substantial evidence test applies in this case to the facts, for example, Dr. Carpenter's education and past and present work experience, the conclu-

sion that a person with his background is a qualified vocational expert is a conclusion of law, subject to a much broader review by this court. The administrative interpretation of the law is entitled to great weight, but it is not binding on this court. *E. g., Conley v. Ribicoff*, 294 F.2d 190 (9th Cir. 1961); *Schoultz v. Weinberger*, 375 F.Supp. 929 (E.D.Wis.1974). Memorandum of Jan. 13, 1978, at 8. As noted in that Memorandum, the cases cited by the parties and those found by the court provided little assistance in determining the standards for qualification of vocational experts who testify before the Social Security Administration. Because of the importance of the decision and the difficulty in finding relevant decisions by other courts, additional briefing was ordered.

The additional briefing by the parties reflected the dearth of law in this area. Plaintiff offered some cases on the qualification of experts to testify in a court trial; these cases agreed that current expertise is essential, but that a judge has relatively wide discretion in admitting or excluding expert testimony. Although plaintiff believed that an administrative law judge should not be accorded that breadth of discretion, plaintiff was unable to find support for that proposition. Defendant provided an affidavit by Rosalyn C. Taylor, Chief of Section VI of the Civil Actions Branch of the Bureau of Hearings and Appeals of the Social Security Administration. This affidavit stated that the criteria for qualified vocational experts include "[c]urrent and extensive experience in . . . rehabilitation counseling and placement" and "[w]ell rounded, up-to-date knowledge of, and experience with industrial and occupational trends and local labor market conditions."

Based on the evidence provided in the transcript of the hearing and in documents filed with the Social Security Administration and with the court, this court concluded that Dr. Carpenter did not qualify as a vocational expert with current and up-to-date knowledge. That decision was filed March 20, 1978. On March 30, 1978, de-

fendant filed the motion for reconsideration presently before this court.

Defendant seeks amendment of this court's decision pursuant to FRCP 52(b), a new trial pursuant to FRCP 59(a), alteration or amendment of judgment pursuant to FRCP 59(e), and relief from judgment either pursuant to FRCP 60(b)(1) based on mistake, inadvertence, surprise, or other excusable neglect, or pursuant to FRCP 60(b)(6) based on other equitable reasons. Although based on a number of the Federal Rules of Civil Procedure, the motion essentially seeks reconsideration of the court's decision. The grounds for the motion are that the court's decision was made

without knowledge by counsel or the Court of the facts (1) that an identical challenge was made and rejected by United States District Judge Robert F. Peckham of the Northern District of California, (2) of Dr. Carpenter's resume of experience and background, and (3) that in at least two previous cases this court has itself sustained decisions of the Social Security Administration in which Dr. Carpenter testified as a vocational expert.

Various exhibits are attached to the motion: a 1977 resume of Dr. Carpenter, the decision in *Kinzell v. Weinberger*, CCH Unemployment Ins.Rep. ¶ 14,382 (N.D.Cal. 1975) (per Judge Peckham), the decision and judgment in *Strang v. Weinberger*, Civ. No. S–2665 (E.D.Cal. filed Feb. 5, 1975 and Feb. 10, 1975), and the decision and judgment in *Tate v. Weinberger*, Civ. No. S–74–577 (E.D.Cal. filed March 21, 1977). Thereafter, defendant filed a letter from Dr. Carpenter, dated April 18, 1978 and accompanying exhibits. Plaintiff filed opposition to the motion for reconsideration, urging that good cause for amendment of the order or relief from judgment had not been shown. In addition, plaintiff argues that the cases and other documents filed by defendant are not relevant and cannot provide grounds for alteration of this court's March 20, 1978 decision. The parties have submitted the motion on the briefs.

■ The initial question before this court is whether to reconsider the March 20, 1978 decision. Defendant seeks reconsideration under a number of provisions in the Federal Rules of Civil Procedure, only some of which are really pertinent to the circumstances of this action. The motion is made first under FRCP 52(b) which provides in part:

> Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59.

Motions under Rule 52(b) are primarily designed to correct findings of fact which are central to the ultimate decision; the Rule is not intended to serve as a vehicle for a rehearing. *E. g., Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224, 244 (N.D.Ill.1976); *Minneapolis-Honeywell Regulator Co. v. Midwestern Instruments, Inc.,* 188 F.Supp. 248, 254 (N.D.Ill.1960), *aff'd,* 298 F.2d 36 (7th Cir. 1961), *citing Heikkila v. Barber,* 164 F.Supp. 587 (S.D.Cal.1958); 9 Wright & Miller, Federal · Practice and Procedure § 2582.

■ Motions under Rule 52(b) are closely related to motions under Rule 59. Defendant herein also moves under Rule 59(a) and (e). Rule 59(a) provides in part:

> A new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Rule 59(e) simply provides: "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." The circumstances of this action do not lend themselves to a motion under Rule 59. In non-jury cases, the Rule is designed for instances in which evidence has been admitted or excluded improperly, evidence has been newly-discovered, or improper actions of counsel have affected the outcome of the case. The Rule is intended for cases that have gone to trial, not cases decided on motions for summary judgment. *See generally* 11 Wright & Miller, Federal Practice and Procedure §§ 2805, 2808-09; 6A J. Moore, Federal Practice ¶¶ 59.05, 59.-07, 59.12.

■ The motion for reconsideration is also brought under Rule 60(b)(1) and (6); the most appropriate provision under the circumstances of this case. The Rule provides in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment.

Equitable principles govern the decisions under Rule 60(b). The policy of the law favoring decisions on the merits after full consideration of all relevant matters must be balanced against the policy in favor of achieving finality in litigation. Case law can be found to support either extreme of the balance, but in the final analysis the decision turns on the circumstances of the particular case. *See generally* 11 Wright & Miller, Federal Practice and Procedure §§ 2857–64.

■ Plaintiff argues that no good cause has been shown to justify reconsideration of this court's March 20, 1978 decision. The only justification for reconsideration offered by defendant is that this court reached that decision without knowledge of the three cases now provided by defendant and without examining Dr. Carpenter's newest resume. Two of the three cases were decided in 1975, including the decision by Judge Peckham on which defendant primarily relies. Thus, these cases were available to defendant on the three earlier op-

portunities to research the qualification of vocational experts and brief the relevant cases; these opportunities arose when plaintiff moved for a remand, when plaintiff objected to the magistrate's proposed findings and recommendations, and when this court ordered additional briefing.

The questions presented by this appeal involved an area of the law on which few cases have commented, even tangentially, and on which the treatise writers have not expounded. For that reason, and only for that reason, this court has reluctantly decided to grant defendant's motion for reconsideration. This leniency is not to be taken as precedent for future cases. There is a real danger that granting reconsideration under the circumstances would encourage litigants to file inadequately researched points and authorities, await the court's decision, and then, if they find the decision unsatisfactory, seek reconsideration in light of the authorities that should have been presented to the court at the time of the original briefing. Such a practice would place an intolerable burden on the courts and prejudice those litigants who properly and adequately brief the questions at the time of the initial motion. Nonetheless, because of the court's desire to reach the right decision, reconsideration will be granted in this case.

■ Granting reconsideration does not, however, indicate that the court will reverse its prior decision, only that it will reconsider the decision in light of the authorities now cited by defendant. Certain of the evidence and authorities presented is clearly inadequate to justify reversal. Defendant cites two cases in which this court has sustained decisions of the Social Security Administration which were based in part on Dr. Carpenter's testimony: *Strang v. Weinberger, supra,* and *Tate v. Weinberger, supra.* The question of Dr. Carpenter's qualification as a vocational expert was not raised in either case, and this court's March 20, 1978 decision implicitly holds that the question is not one that the court would have raised *sua sponte.* Defendant also provided a copy of Dr. Carpenter's 1977

resume. This resume is substantially similar to his 1970 resume which was part of the administrative record considered by the court earlier. The only significant change is in the description of duties, which now states:

In charge of a ward of approximately 50 patients, both sexes, all ages, histories of mental illness or mental retardation or both, with frequent physical problems of all kinds. I assist in placing these in hospital industries, vocational and academic training programs inside and outside the hospital and in jobs outside the hospital. I perform diagnosis, treatment, teaching and research.

This resume statement does not describe the frequency of or depth of involvement in vocational placement outside the hospital setting. As noted in this court's earlier decisions, Dr. Carpenter testified at the hearing that he "[o]ccasionally, but not frequently," placed patients in jobs outside the hospital and that he had placed approximately ten patients in outside jobs in the preceding two years. The generality of the resume cannot offset the specific testimony given by Dr. Carpenter. In a reply brief, defendant offered a letter from Dr. Carpenter, stating in part that he had testified in approximately 600 hearings since 1963. Even if this letter were presented in the form of an affidavit so that it could be considered as evidence, testimony in administrative proceedings would not establish the "[c]urrent and extensive experience in . . . rehabilitation counseling and placement" or the "[w]ell rounded, up-to-date knowledge of, and experience with industrial and occupational trends and local labor market conditions" required for qualification as a vocational expert.

Defendant primarily relies on Judge Peckham's decision in *Kinzell v. Weinberger, supra.* The pertinent portion of that decision is as follows:

The plaintiff's second contention that the decision of the Secretary is not supported by substantial evidence is based upon the ground that there is no competent vocational testimony in the record to

support the conclusion that lighter work is available to the plaintiff. He argues that foundational evidence is lacking as to:

(1) whether any of the jobs mentioned existed in the national economy;

(2) the number of jobs available in such an industry;

(3) the basis for the "expert opinion" that such jobs mentioned existed in the national economy; and

(4) whether an individual with plaintiff's impairments would be hired by such employers.

Expert vocational testimony was given at the administrative hearing by Dr. Lewis G. Carpenter. Dr. Carpenter possesses a M.A. and a PhD in psychology from Stanford University and the University of California, respectively. At the time of the hearing, he had had 25 years experience with state and federal agencies in the counseling and placement of persons with vocational handicaps. Dr. Carpenter was called to give expert testimony in accordance with a contract which he executed with the Department of Health, Education and Welfare. Under questioning at the hearing by the administrative law judge, Dr. Carpenter testified as follows: . . .

> A. Well I believe, uh, the claimant testified that in his opinion he could perform the ground work of a rigger which is the work he has done previously and I see no reason from the testimony and from the record that he could not do so. Similarly, to (sic) doing maintenance work around a facility such as a (sic) oil refinery would be within his capabilities within the assumption which you've given me. Other type of work which would fit the assumption you've made, would be flame cutter, hand burner, *Now these exist in the hundreds in the bay area.* Emphasis added.

Transcript at 42–43.

Dr. Carpenter appears to be well qualified to render such an opinion, and such testimony is frequently accepted by courts. *Harvey v. Richardson*, 451 F.2d 589 (9th Cir. 1971); *Chavies v. Finch*, 443 F.2d 356 (9th Cir. 1971); *Kerner v. Celebrezze*, 340 F.2d 736 (2d Cir. 1965), *cert. denied, Kerner v. Gardner*, 382 U.S. 861, 86 S.Ct. 121, 15 L.Ed.2d 99 (1965).

It is not wholly clear from the decision whether plaintiff contended that Dr. Carpenter was not a qualified vocational expert or whether the contention was that his testimony was insufficient on the particular questions noted. Had the challenge been to his qualification as an expert, then one would expect that Judge Peckham would have discussed the standards for judicial review of such a challenge, that is, whether the substantial evidence test or the broader review appropriate to a conclusion of law applied. Assuming that the *Kinzell* plaintiff did challenge Dr. Carpenter's qualification, the decision is distinguishable from the instant case. There is no indication that any objection was raised to Dr. Carpenter's testimony at the administrative hearing; the plaintiff in *Kinzell* was acting *in propria persona* at the hearing. In the instant case, this court stressed the fact that plaintiff had objected to the use of Dr. Carpenter as a vocational expert *prior* to the administrative hearing, when another expert could have been selected with minimal inconvenience, and renewed that objection at each point in the appeals process. As this court stated in its March 20, 1978 decision: "Had plaintiff failed to make a prior objection, the result in this case might well be different." Finally, the statement in *Kinzell* that Dr. Carpenter "had had 25 years experience with state and federal agencies in the counseling and placement of persons with vocational handicaps" is not supported by the evidence before this court.

In accordance with the foregoing discussion, this court grants reconsideration of the March 20, 1978 Memorandum and, having reconsidered, declines to alter that decision.

IT IS SO ORDERED.