**James K. ADAMS, Plaintiff,**

**v.**

**Fob JAMES, etc., et al., Defendants.**

**Civ. A. No. 80–413–N.**

United States District Court,
M. D. Alabama, N. D.

Oct. 1, 1981.

On Motion For New Trial Oct. 30, 1981.

Alvin T. Prestwood, Claude P. Rosser, Jr., Montgomery, Ala., for plaintiff.

Sarah M. Greenhaw, Frank Ussery and Algert S. Agricola, Asst. Attys. Gen., State of Alabama, Montgomery, Ala., for all defendants except Shoemaker.

Ray Acton, Dept. of Public Safety, Montgomery, Ala., for defendant Shoemaker.

## MEMORANDUM OPINION

HOBBS, District Judge.

Recognizing that this case presents only questions of law, the parties agreed to submit it for decision upon the record. In this case, plaintiff, a State Trooper Captain, claims that after reaching age sixty-one, he was involuntarily terminated from his employment with the Alabama Department of Public Safety in violation of the Age Discrimination in Employment Act (ADEA). 29 U.S.C. § 621, et seq., and 42 U.S.C. § 1983. The Court maintains jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3). Upon careful consideration of the record and briefs, the Court is of the opinion that plaintiff's rights under ADEA and Section 1983 were violated and that he is entitled to back pay for the one-year period of February 29, 1980 to February 28, 1981, and is entitled to reinstatement upon production of sufficient evidence of physical and mental fitness to perform his job in compliance with Sec. 36–27–16(a)(1)(e), Alabama Code, 1975.

### I

Prior to his involuntary retirement, plaintiff had served thirty-two years in various capacities with the Alabama Department of Public Safety, ultimately serving as a state trooper captain. In this position, plaintiff was the chief examiner in the Driver's License Division. For the last ten years of his service with the Department of Public Safety, plaintiff's assigned duties involved only administrative and supervisory responsibilities, which plaintiff characterizes as a "desk job." As stipulated by the parties, plaintiff's job performance in each position was acceptable in all material respects.

Section 36–27–16(a)(1)(e), Alabama Code (1975), provides in pertinent part as follows:

[A]ny state policeman who has attained age 60 shall be retired forthwith; provided, that any state policeman who attains age 60 may be continued in the state service from year to year on application of said employee, approved by the personnel board, if evidence of physical or mental fitness to carry out his duties is furnished.

Plaintiff's sixtieth birthday was on February 24, 1979, but several months prior thereto, he applied for a one year continuance of employment in accordance with the above statute. His application for continuing employment was approved by the Personnel Board in December of 1978.[1] Plaintiff's service rating for the year 1979 was graded "excellent" on all eight of the categories for which ratings were provided.

---

1. In addition to plaintiff's continuance, one other trooper was granted a continuance beyond his sixtieth birthday, and a second trooper was granted extensions beyond his sixty-third birthday.

On August 9, 1979, Governor James issued a memorandum to all heads of departments and boards stating:

In order to start the implementation of the 1980–81 Budget process which should reflect a 5% reduction in taxpayer monies, and to rid Alabama of useless, meaningless, bureaucratic expenditures, the following State Personnel Procedures are hereby implemented.

\* \* \* \* \* \*

Third, NO department, agency, board et al is to request a waiver of the 70 year old mandatory retirement without the approval of the Finance Director, and his approval is only to be given in the case when the public health of Alabama would be impaired.

Although Governor James did not expressly refer to retirement of state troopers at age sixty, it is apparent that Governor James' policy of mandatory retirement extended to state troopers. Indicative of this policy is a memorandum from defendant Stanley Frazer, then Director of the State Personnel Department, to Colonel Shoemaker, Director of the Department of Public Safety. In this memorandum, Frazer stated:

Governor James has expressed the very strong feeling that employees should retire not later than the compulsory retirement age set forth in the law, and he has instructed his cabinet members not to recommend continuation.

\* \* \* \* \* \*

I am enclosing a list of employees in your Department who will be subject to compulsory retirement during the remainder of this fiscal year. I am also enclosing a supply of applications for retirement. Employees should be informed of the Governor's policy, and encouraged to apply for retirement if they are members of the Retirement System.

Captain Adams' name was included on the list.

In December of 1979, plaintiff again applied for a continuance, such continuance to begin at the expiration of his first extension, or his sixty-first birthday. In compliance with state law, plaintiff submitted with his application evidence of physical and mental fitness.

On December 21, 1979, defendant Shoemaker recommended that plaintiff be retired from his job as State Trooper Captain. By letter dated January 15, 1980, defendant Frazer notified plaintiff that the Personnel Board denied his request for a one year continuance and that "the law [would] require [plaintiff] be retired from service not later than February 29, 1980." Consequently, plaintiff was retired on February 29, 1980.

Subsequently, plaintiff filed this action claiming that his forced retirement violated his rights under ADEA. In addition, plaintiff alleges that his rights under ADEA were violated by persons under color of state law and, therefore, his claim is cognizable under Section 1983.[2]

## II

Congress found that older workers were at an extreme disadvantage in trying to retain employment and that it was common practice for employers to set arbitrary age limits regardless of potential job performance which age limits worked to the disadvantage of older persons. Accordingly, Congress enacted ADEA "to promote employment of older persons based on their ability rather than age [and] to prohibit arbitrary age discrimination in employment. . . ." 29 U.S.C. § 621.

ADEA makes it unlawful for "an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623. The prohibitions in ADEA apply to individuals between

---

**2.** Plaintiff did not allege that Section 37–27–16(a)(1)(e) violates his rights to equal protection. See *Massachusetts Bd. of Retirement v.* *Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 920 (1975).

the ages of forty and seventy. 29 U.S.C. § 631(a).

## III

■ Originally, ADEA did not apply to states, but by amendment in 1974, Congress included within the meaning of "employer," states and political subdivisions thereof. Relying on *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), defendants contend that the 1974 amendment was enacted pursuant to the Commerce Clause of the United States Constitution, and thus is unconstitutional as applied to the states because of the Tenth Amendment to the Constitution. This issue was thoroughly briefed by the parties and upon consideration of the briefs and the legislative history of the amendment, the Court concludes that the 1974 amendment was enacted by Congress pursuant to its powers under § 5 of the Fourteenth Amendment, and thus can be constitutionally applied to defendants. See *Arritt v. Grisell*, 567 F.2d 1267 (4th Cir. 1977); *E.E.O.C. v. County of Calumet*, 519 F.Supp. 195, (E.D.Wis.1981); *Aaron v. Davis*, 424 F.Supp. 1238 (E.D.Ark.1976); *cf. E.E.O.C. v. Wyoming*, 514 F.Supp. 595 (D.Wyo.1981).

## IV

Defendants concede that plaintiff has established a prima facie case under ADEA, but contend that the refusal to continue plaintiff in his employment was not a violation of ADEA because an age requirement for state policemen is a bona fide occupational qualification (BFOQ), and thus is a recognized exception expressly provided for in the ADEA. 29 U.S.C. § 623(f)(1) provides that:

It shall not be unlawful for an employer . . . to take any action otherwise prohibited . . . where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business . . . .

■ In order to establish a BFOQ, an employer has the burden of satisfying, what has been referred to by the Fifth Circuit Court of Appeals as the *Weeks-Diaz* test.[3] *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588 (5th Cir. 1978); *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224 (5th Cir. 1976).

Under this two-prong test, the employer has the burden of proving first that it has "reasonable cause to believe that all or substantially all of a class of [employees] would be unable to perform a job safely and efficiently." *Marshall, supra*, at 591. *Usery, supra*, at 235. If the employer cannot meet this burden, but "it demonstrates that it is impossible or highly impractical to deal with [employees] on an individualized basis, it may apply a reasonable general rule" to satisfy the first prong. *Id.* The second prong of the test requires that the BFOQ be "reasonably necessary to the essence of the business operation." *Id.*

The parties have supplied the Court with extensive documentation, including affidavits of competent doctors and gerontologists to support or refute that defendants have met the burden of satisfying the *Weeks-Diaz* test. In rebuttal to plaintiff's affidavit that he has a "desk job" and has not been required to do other than administrative tasks for the past ten years, defendants insist that all state troopers, whether they are state trooper captains or whatever their position, are subject to being called on to perform duties which may be physically demanding, and thus the action of compelling retirement at age sixty is reasonable and is a bona fide occupational qualification.

■ The Court need not decide in this case whether the State could make a determination that all state troopers, including state trooper captains, must retire at age sixty because such age constitutes a bona fide occupational qualification. It is clear that at the time defendants made the decision to eliminate from employment plaintiff

---

**3.** This test was derived from the cases of *Weeks v. Southern Bell Telephone & Telegraph Co.*, 408 F.2d 228 (5th Cir. 1969) and *Diaz v.* *Pan American World Airways*, 422 F.2d 385 (5th Cir. 1971) *cert. denied*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267.

and all other troopers beyond age sixty, they did not act on a judgment that the troopers were incompetent to discharge fully their duties. Instead, defendants' decisions were based solely on the directive of the Governor which was motivated entirely on the need to trim the State's budget by reducing the State payroll. The Legislature by enacting a statute which allowed retention of state policemen beyond their sixtieth year on application of a state trooper accompanied by "evidence of physical or mental fitness to carry out his duties" appears to have made a legislative determination that being over sixty did not render a state trooper incompetent. Section 36–27–16(a)(1)(e), Alabama Code, 1975.

In *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 920, the Supreme Court upheld a compulsory retirement law of age fifty for state troopers in Massachusetts when the Massachusetts law was challenged solely as being in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. The Supreme Court noted that the constitutional test under the Fourteenth Amendment did not involve strict scrutiny, and it found a rational basis for the legislative determination imposing a mandatory retirement at age fifty because of the expressed legislative purpose to protect the public by assuring physical preparedness of its uniformed police. In the instant case, unlike *Murgia*, the discharge of Trooper Adams must be considered in the light of a clear Congressional mandate against age discrimination, and the action taken by these defendants clearly was not motivated by a decision that plaintiff Adams or others over age sixty were unable to perform adequately; the decision was purely dictated by budgetary concerns.

This is certainly one type of age discrimination that the ADEA was enacted to prevent. However commendable and financially responsible the action of the Governor may be in seeking to reduce the rising costs of government, Congress has made it impermissible to achieve such reductions by singling out the aged for elimination from the work force. Plaintiff Adams, as an individual within the protected ages set out in ADEA, was involuntarily retired, solely on the basis of his age. This violates the Congressional statute.

## V

Having decided that plaintiff's rights under ADEA were violated, the Court must now determine the appropriate relief. The Court is of the opinion that when defendants denied plaintiff a continuation of employment, plaintiff had adequately supplied evidence of physical and mental fitness, and thus, he would have been granted a one year continuation beginning February 29, 1980, had defendants not made the decision to discontinue extensions for budgetary reasons. Accordingly, the Court concludes that plaintiff is entitled to back pay for that one year period.

As to plaintiff's employment beyond February 28, 1981, the decision to grant plaintiff an additional extension rests with the defendants. The Court, however, will enjoin defendants from denying plaintiff a continuance from February 28, 1981 to February 28, 1982, and from denying any future application on the basis of age when clear and convincing evidence of plaintiff's physical and mental fitness is supplied. If plaintiff applies for a continuation of employment from February of 1981 until February of 1982 and such continuation is granted, plaintiff shall also be entitled to back pay from February 28, 1981, until such time as he is reinstated. If, on the other hand, defendants conclude that plaintiff should not be continued in employment beyond age sixty-two because of lack of evidence of physical or mental fitness, then the Court concludes that the back pay award should be limited to one year.

Plaintiff claims that defendants' actions were willful and thus plaintiff is entitled to liquidated damages in an amount equal to the back pay award. Although liquidated damages can be awarded when there exists willful violations, such damages are not mandatory. *Hays v. Republic Steel Corp.*, 531 F.2d 1307 (5th Cir. 1976). In the

exercise of its discretion, the Court declines to award liquidated damages.

Finally, plaintiff is entitled to an award of attorneys' fees. Such fees will be determined at a later date after a petition by plaintiff's attorneys is filed and defendants have had an opportunity to respond thereto.

A judgment will be entered in accordance with this opinion.

## ON MOTION FOR NEW TRIAL

This cause, submitted on the record on August 8, 1981 and decided October 1, 1981, is now before the Court on defendants' motion, pursuant to Federal Rules of Civil Procedure 52(b) and 59(a), for a new trial or the opening of the judgment to take additional testimony and amend the findings of fact. As grounds for their motion, defendants contend that the Court erred in finding that the defendants' decision to involuntarily retire all state troopers at age sixty was based on budgetary concerns rather than a decision that age is a bona fide occupational qualification for state trooper captains under the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621, *et seq.* In opposition, plaintiff argues that the new facts defendants seek to bring before the Court are irrelevant to the main issue in this cause, and that defendants' grounds for requesting a new hearing or opening the judgment fail to support either a Rule 59 or Rule 52(b) motion. Upon consideration of the arguments of the parties, this Court is of the opinion that defendants' motion is due to be denied.

Initially, this Court must recognize that Rules 52(b) and 59 are designed for limited purposes. Motions made pursuant to these rules "are not intended merely to relitigate old matters nor are such motions intended to allow the parties to present the case under new theories. Instead, these motions are intended to correct manifest errors of law or fact or to present newly discovered evidence." *Evans, Inc. v. Tiffany & Co.*, 416 F.Supp. 224, 244 (N.D.Ill. 1976). Motions under Rule 52(b) are intended to provide a means to "correct findings of fact which are central to the ulti-

mate decision." *Davis v. Mathews*, 450 F.Supp. 308, 318 (E.D.Cal.1978) 9 Wright & Miller, Federal Practice and Procedure Sec. 2582. Motions under Rule 59 are granted to nonjury cases on the grounds that "evidence has been admitted or excluded improperly, evidence has been newly discovered, or improper actions of counsel have affected the outcome of the case." *Davis v. Mathews, supra.* 11 Wright & Miller, Federal Practice and Procedure, Sec. 2805.

Since this cause was submitted on the record by agreement of the parties, defendants do not and could not contend that evidence was improperly admitted or excluded, or that improper actions of counsel affected the outcome. Thus, defendants' only grounds for this motion are that evidence has been newly discovered or that there exists evidence which indicates that findings of fact central to the ultimate decision need to be corrected.

As to the former ground, judgment was entered in this cause pursuant to the order of July 8, 1981 wherein the parties agreed to submit the case on the record. In the same order this Court requested that the parties file any further documents they wished to have considered by July 31, 1981. Defendants did not file any additional documents; therefore, this Court assumes that defendants thought they had presented all evidence necessary to support their claim that age was a bona fide occupational qualification.

The evidence which defendants now submit in support of their motion is (1) an affidavit by Alabama Governor Fob James stating his "philosophy and policy with regard to the Department of Public Safety" since his administration began; (2) an affidavit by David G. Bronner, Director of Finance, pointing out that the budget of the Department of Public Safety was intended to and did grow over the years 1979 to 1981; (3) an affidavit with supporting documents by Harold K. Chaffin documenting the budgetary increases; and (4) an affidavit and supporting documents by Captain John R. Hall, Personnel Officer for the Depart-

ment of Public Safety, establishing that the size of the Department has increased since 1980. There is nothing to indicate that any of this evidence is new or was unavailable to the defendant prior to July 31, 1981, except for the hiring statistics for August and September of 1981. The Court fails to see why, if this information is relevant, these documents were not presented to this Court prior to July 31, 1981.

This Court could deny defendants' motion solely for the above stated reasons; however, the Court thinks there is a more important rationale for denial. The information the defendants seek to have this Court consider is irrelevant to the central issue in this cause. The primary factual determination to be made in this type of case is what procedures were followed, determinations made, and rationale given by the employer prior to the involuntary retirement of the employee. Thus, this Court is concerned only with the documented reasons for requiring retirement at age sixty given by defendants prior to Captain Adams' retirement in February of 1980. The meaning which the Governor and Director of Finance intended for the Personnel Director and the Director of Public Safety to give the Governor's memorandum is irrelevant in the face of the documentary evidence showing the construction which the Personnel Director did give the memorandum.

■ Likewise, the Governor's philosophy that the number of state troopers and their budget should be increased and the fact that the Governor has worked to accomplish these goals in other areas, is irrelevant to the reason Captain Adams was involuntarily retired. The evidence clearly shows that the Governor issued a memorandum stating that in order to trim the budget no department, agency or board was to request a waiver of the seventy year old mandatory retirement law. Personnel Director Frazer then informed the Director of Public Safety that the Governor's decision on compulsory retirement applied to his Department's sixty year old retirement law and even attached a list of Department of Public Safety employees who were to be retired. This list included Captain Adams. It may be true that Director Frazer's interpretation was not in accordance with the Governor's philosophy; but this does not change the fact that Captain Adams' request to work beyond age sixty was turned down due to an administrative policy based solely on economic concerns.

As this Court stated in its memorandum opinion in this cause, in order to establish that age is a bona fide occupational qualification defendants would have to at least show that prior to retiring Captain Adams, they performed studies as to the effect of age on the qualifications of a state trooper captain, found that age had a substantial effect on a captain's ability to perform his duties, and determined that it was impossible or highly impracticable to determine who is qualified on an individual basis. All of defendants' medical and job requirement evidence was compiled after February, 1980. In light of recent cases presenting similar factual situations, this Court is doubtful that this evidence would support a finding of a bona fide occupational qualification even if this evidence had been compiled prior to the retirement decision. See *Johnson v. Mayor and City Council of Baltimore*, 515 f.Supp. 1287, 1294–1301 (D.C.Md. 1981) (Baltimore city ordinance requiring firefighters to retire at age sixty held not a BFOQ). Certainly evidence compiled after the decision cannot support a finding of a bona fide occupational qualification. Nor can the Governor's good faith belief as to the effect of age on the ability to perform the job, without proof of a reasonable cause for such belief, support a determination that age is a bona fide occupational qualification. *Weeks v. So. Bell Tel. & Tel. Co.*, 408 F.2d 228, 235 (5th Cir. 1969), *Houghton v. McDonnell Douglas Corp.*, 553 F.2d 561, 564 (8th Cir.) *cert. denied* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977). Particularly is this true where the Governor's philosophy that all such employees must be retired is in conflict with a legislative judgment expressly allowing state troopers to have their physical and mental ability to perform the job after age sixty determined on an individual basis. Ala.Code Sec. 36–27–16(a)(1)(e) (1975).

For the reasons stated above, this Court finds that defendants have failed to establish sufficient grounds to support a motion to open the judgment or a motion for a new trial. An order denying defendants' motion will be entered in accordance with this opinion.