The **AIRLINES STEWARDS AND STEW-ARDESSES ASSOCIATION, LOCAL 550, TRANSPORT WORKERS UNION OF AMERICA**, Plaintiff, Appellee,

v.

**CARIBBEAN ATLANTIC AIRLINES, INC.**, Defendant, Appellant.

No. 7272.

United States Court of Appeals
First Circuit.

Heard June 3, 1969.

Decided July 8, 1969.

Juan R. Torruella, Hato Rey, P. R., with whom Wilson F. Colberg, San Juan, P. R., and Pieras & Torruella, Hato Rey, P. R., were on brief, for appellant.

Alan E. Greenfield, Miami, Fla., with whom Sr. Francisco Aponte, Perez, Santurce, P. R., and Kovner, Mannheimer, Greenfield & Cutler, Miami, Fla., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This appeal involves a dispute between appellant airline company and appellee union over the assignment of "open time" flights. Such flights occur whenever a regularly-scheduled crew member is absent. These flights are covered by standby stewardesses on a seniority basis pursuant to the provision of paragraph 4.G. of the Flight Stewardesses Scheduling Policy Manual which states that:

"If no low on time bidholder has indicated her availability, open time shall be offered to stand by in order of seniority. Such open time flights shall be offered and posted on the daily schedule at least thirty (30) minutes before the scheduled departure of the flight. In determining the assignment of open time a Flight Stewardess must be available at San Juan Operations at least thirty (30) minutes prior to the estimated time of departure of the flight."

The union contends that prior to September 9, 1968, the company offered open time flights on an individual basis. After that date, however, the company began offering open time flights on a group basis, i.e., a stewardess would have to take all the flights in a group or none at all.[1]

The union, alleging a unilateral change of working conditions, filed a complaint, seeking a temporary restraining order on September 11, 1968. After a hearing, a temporary restraining order and subsequently a permanent injunction were issued by the district court, 294 F.Supp. 630.

The company brings this appeal seeking reversal and vacation of the injunction. The threshold, and primary, question before us is that of the district court's jurisdiction. In order to answer this question we look to the provisions of the Railway Labor Act, 45 U.S.C. § 151 et seq.[2]

The Railway Labor Act divides disputes into two broad categories—so-called minor disputes over which the National Railroad Adjustment Board has exclusive jurisdiction,[3] and "major" disputes which are covered by § 6 of the Act.

---

1. The company argues, with some support in the record, that prior to September 9, 1968, flights were offered on both an individual and a group basis. There is, however, no indication that group flights were insisted upon as they were after September 9, 1968.

2. The Railway Labor Act was enacted in 1926 and is applicable to the present case by virtue of the 1936 amendments which extended the coverage of the Act to air carriers, 49 Stat. 1189 (1936), 45 U.S.C. § 181 et seq. (1964).

3. The Act vests discretion in the National Mediation Board to establish a "National Air Transport Adjustment Board", but as of the present no such agency has been established. Until such a board has been created, the Act imposes a duty on every air carrier and its employees to establish systems or group, or regional boards. The collective bargaining contracts which establish such boards are creatures of federal law and are enforceable in federal courts. International Ass'n of Machinists A.F.L.-C.I.O. v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963).

In the present case the company and the union have created an adjustment board, but the union has failed to file a grievance.

The difference between major and minor disputes is easily stated: " * * * 'major' disputes relate to the formation of new agreements or modification of existing agreements; 'minor' disputes relate to the interpretation or application of existing agreements." Southern Ry. Co. v. Brotherhood of Locomotive Fire & Eng., 127 U.S.App.D.C. 371, 384 F.2d 323, 327 (1967). *See also*, Elgin J. & E. Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945).

In the case before us, as in most cases, the court's task is to distinguish between disagreements over the meaning or coverage of the contract, and unilateral attempts to change the contract. In this regard the following discussion by the court in *Southern Ry. Co.*, *supra*, is instructive:

"If the railroad took action which it admitted was not in conformity with the existing agreement there would be no question that a 'major dispute' was involved; and the same result necessarily obtains where the railroad's claimed justification is without any reasonable basis in the contract. United Industrial Workers, etc. v. Board of Trustees, 351 F.2d 183 (5th Cir. 1965). But we think that, where the railroad asserts a defense based on the terms of the existing collective bargaining agreement, the controversy may not be termed a 'major' dispute unless the claimed defense is so obviously insubstantial as to warrant the inference that it is raised with intent to circumvent the procedures prescribed by § 6 for alteration of existing agreements." 384 F.2d at 327.

In short, in order for there to be a finding that a dispute is "major", there must be a showing that the company's defense constitutes a "substantial and clearly apparent change." *See* International Ass'n of Machinists v. Eastern Airlines, Inc., 224 F.Supp. 48 (S.D.Fla.1963).

In the present case the company sought to justify its conduct by invoking paragraph 4.G. of the flight scheduling manual, *supra,* which states that *"Such* open time *flights* shall be offered. * * *"* [Emphasis added.] In the company's view the district court's action was tantamount to a rewriting of paragraph 4.G. to read *"Each* open time *flight* shall be offered. * * *"* [Emphasis added.]

Based on the literal language of paragraph 4.G. the company's argument is not without merit. But the district court looked to past practice in holding that there has been a radical departure from the contract. Assuming the district court's description of past practice to be accurate, *see* n. 1, *supra*, it is nevertheless not conclusive. Past practice may well be persuasive evidence of the meaning of contract terms but so may be the plural reference to "flights". This confrontation between words and practice poses a run-of-the-mill problem of interpretation of the type commonly presented to arbitrators.[4]

The district court found that the company's conduct constituted a radical departure from the terms of the contract, and that this was therefore a "major" dispute. The court failed, however, to pursue the critical inquiry as to whether the company's contractual defense was so obviously insubstantial as to be an attempt to circumvent § 6 of the Railway Labor Act. In our view no such finding could be made.

It may be that the district court's interpretation of the contract will ultimately prove to be correct. But in deciding whether to assume jurisdiction to grant injunctive relief, the court's task is not to interpret the contract. It is to determine whether the contractual defense is frivolous. Otherwise the arbitration machinery mandated by the Railway Labor Act will be dealt a crippling blow. *Cf.* Brotherhood of R. R.

4. Indeed, the company might take the position that the contract was drafted with an eye to the future, i. e., in anticipation of the time when increased traffic would mandate assignment of open time flights on a group basis.

**292**

Trainmen v. Chicago R. & I. R. Co., 353 U.S. 30, 35–39, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957).

We hold, therefore, that the union has misconceived its remedy and that the injunction must be vacated.

Reversed and remanded for vacation of the injunction.