UNITED TRANSPORTATION UNION GENERAL COMMITTEE OF ADJUSTMENT (ON PROPERTY OF PENN CENTRAL COMPANY), Plaintiff-Appellee,

v.

George P. BAKER et al., Defendants-Appellants.

No. 72–1955.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1973.

Decided Feb. 22, 1974.

Certiorari Denied Oct. 15, 1974.
See 95 S.Ct. 69.

Robert H. Bierma, Chicago, Ill., Hermon M. Wells, Philadelphia, Pa., for defendants-appellants.

Keith E. Roberts, Lloyd E. Dyer, Jr., Wheaton, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, KNOCH, Senior Circuit Judge, and CAMPBELL*, Senior District Judge.

SWYGERT, Chief Judge.

The trustees of the Penn Central Transportation Company appeal from a decree granting the plaintiff, United Transportation Union, an injunction restraining the defendant railroad from replacing an asserted "crewboard" with computer print-outs.

The union's claim was that the substitution of "print-outs" for the prior system of notifying railroad employees of work assignments was a unilateral change of the collective bargaining agreement between the union and the railroad, and accordingly gave rise to a "major dispute" between the parties as delineated in section 6 of the Railway Labor Act. 45 U.S.C. § 156. If the union's position is correct, there would be no question but that the district court had jurisdiction to issue injunctive relief to maintain the status quo in the face of a "major" or section 6 dispute. The railroad asserts that its actions were within the purview of the parties' collective bargaining agreement and that at most the instant action involves differences arising out of the interpretation of the collective bargaining agreement, that is, a "minor" or section 3 dispute. 45 U.S.C. § 153. In a minor dispute the district court's assumption of

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

jurisdiction to grant injunctive relief would in general be inappropriate; rather, such a dispute should be deferred to the special competence of the adjustment board, the arbitration machinery specifically mandated by the Railway Labor Act in such circumstances. The threshold question in this action is whether a major or minor dispute is presented by the facts. We find that the circumstances created a minor dispute.

I

The pertinent section of the collective bargaining agreement provided:

> 8–B–1. Crew boards. Crew boards showing the order in which crews are to go out shall be maintained. At outlying points where a crew board attendant is not on duty throughout an entire calendar day, arrangements shall be made so that trainmen desiring information as to their standing on the crew shall be furnished such information.

Prior to the latter part of 1968, the railroad carried out the crew calling function at the Colehour Yard, located near Whiting, Indiana, by providing a crew dispatcher on the first trick (shift) and yard clerks on the second and third tricks. The crew board at the Colehour Yard consisted of records kept in the form of mimeographed sheets of paper containing a list of regular assignments, one list for each trick. Accompanying the mimeographed lists was a handwritten list of men on the "extra list" who were called as needed. All these records were maintained in ledger books on the second floor of the yard office at Colehour Yard. The records were available for inspection by individual employees who desired to check them. In addition to these crew sheets, and the more frequent mode of obtaining information on their status, the employees kept themselves advised of their status by telephone calls to the crew dispatchers or clerks assigned to Colehour Yard. Moreover, the calling of crews for assignments was done by telephone by the crew dispatcher or clerks.

In the latter part of 1968, the railroad made the disputed change in the crew calling function. The change consisted, primarily, of discontinuing the use of the mimeographed and handwritten crew sheets and substituting in their stead computer print-out lists showing the standing of crews and extra men. The crew dispatcher's function at Colehour was consolidated with that of the crew dispatcher's at the 59th St. Yard in Chicago, the principal center of crew dispatching activities for the Chicago area. At the Colehour Yard the print-out sheets were posted three times a day prior to the change of shifts, the information emanating from the 59th St. Yard. The "print-out" sheets purportedly contained the same information as the former crew sheets, namely, a list of regular assignments, a list of extra men and information as to where the extra men worked. As before, the employees at the Colehour Yard could contact the crew dispatcher at the 59th St. Yard by telephone to be advised on their standing, and this method continued to be the primary way in which the employees kept current as to their status.

The effective date of the changeover in crew calling functions was February 1, 1969. Following the changeover, union officials complained orally on various occasions about the manner in which the crew calling function was being handled at Colehour. Various complaints were registered by the union about the adequacy of information being posted and the timeliness of the postings. At no time, however, were steps taken by the union to process the alleged violation of section 8–B–1 through the established grievance procedure. Two and a half years later, on July 2, 1971, the union filed its complaint in the district court seeking injunctive relief, requesting that the crew calling function be reverted to its previous form prior to February 1, 1969. The union grounded its claim for relief on the contention that the substitution of print-out sheets represented a

unilateral change by the railroad of the terms of their collective bargaining agreement with the union plaintiff and created as such a major dispute.

## II

■ The fundamental inquiry in deciding whether to assume jurisdiction to grant injunctive relief is not to interpret the contract; rather, the court must decide whether the asserted contractual defense is frivolous.

Various tests have been applied by the courts as an aid to determining whether a major or minor dispute is present. In United Transportation U. v. Burlington Northern, Inc., 458 F.2d 354, 357 (8th Cir. 1972), the Eighth Circuit declared that, "the test to be applied is that if the contract is reasonably susceptible to the interpretation sought by both the carrier and the union, the dispute is minor and within exclusive adjustment jurisdiction. . . ." The United States Court of Appeals for the First Circuit in Airlines Stewards & S. Ass'n, Local 550 v. Caribbean Atl. A., Inc., 412 F.2d 289, 291 (1st Cir. 1969), quoted with approval the test enunciated by the District of Columbia Circuit in Southern Ry. Co. v. Brotherhood of Locomotive Fire & Eng., 127 U.S.App.D.C. 371, 384 F.2d 323, 327 (1967):

[W]e think that, where the railroad asserts a defense based on the terms of the existing collective bargaining agreement, the controversy may not be termed a "major" dispute unless the claimed defense is so obviously insubstantial as to warrant the inference that it is raised with intent to circumvent the procedures prescribed by § 6 for alteration of existing agreements.

In Switchmen's Union of North America v. Southern Pacific Co., 398 F.2d 443, 447 (9th Cir. 1968), the Ninth Circuit stated the test in the negative:

It is true, as the union points out, that a controversy, although couched in terms of a disagreement· as to interpretation of a contract, may under some circumstances be regarded as a major dispute. This result may be reached if it can be said that the change being imposed by one side on the other is in nowise contemplated or arguably covered by the agreements.

■■ Analyzed in the light of any of these tests it is apparent that the railroad's contractual defense, namely, that the substitution of print-outs for the prior system of crew calling was in compliance with section 8–B–1 of the parties' collective bargaining agreement, is not frivolous and that this dispute involves nothing more than a minor dispute, a dispute as to the interpretation and application of the existing agreement.

The agreement between the parties as to the nature of crew boards was framed in quite general terms:

Rule 8–B–1. Crew boards. Crew boards showing the order in which crews are to go out shall be maintained . . . .

Nothing was stated in the agreement as to the specific nature and substance of a crew board. Prior to the substitution of print-outs the crew board at Colehour was nothing more than a bounded ledger book of mimeographed and handwritten sheets kept on the second floor of the yard house. Can it be said that the railroad's change to print-outs was not contemplated or arguably covered by the agreement? Is the railroad's contention that the print-outs are crew boards within the terms of section 8–B–1 so strained that it can be said that 8–B–1 cannot be reasonably susceptible to that interpretation? Is the railroad's assertion so frivolous and so obviously insubstantial as to warrant the inference that it is raised with intent to circumvent the procedures prescribed by section 6 for alteration of existing agreements? We find that the railroad's substitution of print-outs is clearly within the realm of a good faith, reasonable interpretation of section 8–B–1 of the collective bargaining agreement. It does not follow, however, that this interpretation will be found to be correct. That is a matter

for the adjustment board to determine in the light of its expertise and experience with matters relating to the railroad industry.

The union grounds its case on the decision of the Sixth Circuit in United Transport Union, L. 63E v. Penn Central Co., 443 F.2d 131 (6th Cir. 1971), and the district court below utilized that case to arrive at its decision granting the union injunctive relief. The facts in that case were in all relevant aspects identical to those presented here. The Sixth Circuit affirmed the district court's grant of injunctive relief to the union, restraining the railroad's substitution of print-outs for the former method of crew calling. The Sixth Circuit held that the substitution of print-outs was a unilateral change of working conditions giving rise to a major dispute. With all due respect and deference to our brethren in the Sixth Circuit, we think their decision misconceives the function of a federal court in the context of a major-minor dispute inquiry: the task is not to interpret the contract; rather, it is to determine whether the contractual defense is frivolous. Airlines Stewards & S. Ass'n, Local 550 v. Caribbean Atl. A., Inc., 412 F.2d 289, 291 (1st Cir. 1969). The Sixth Circuit gives considerable attention to what detail a crew board should contain and how the computer print-outs fail to meet those requisites; but no determination is made on the critical question in a major-minor dispute inquiry—whether the railroad's contractual defense is on its face tenable.

In a similar vein the district court in the case at bar went into a detailed analysis of what a crew board should show and how the print-outs fail to measure up to the expected criteria. And likewise, the district court failed to scrutinize the critical question of whether the railroad's contract claim is merely colorable.

It is argued by the union that our recent decision in United Transp. U., Lodge No. 621 v. Illinois Terminal R. Co., 471 F.2d 375 (7th Cir. 1972), supports the district court's decision. That decision is inapposite. Unlike the case here, there the union served a section 6 notice on the railroad six months prior to the railroad's unilateral attempt to effect new work assignments, during which time the parties characterized and treated the dispute as a major dispute. More significantly, the collective agreement between the parties was silent about work starting points and did not preclude or support the railroad altering the location of work assignments, a situation identical to the Supreme Court's decision in Detroit & Toledo Shore Line R.R. v. United Transportation Union, 396 U.S. 142, 90 S.Ct. 294, 24 L.E.2d 325 (1969). Relying on *Shore Line*, we found that a major dispute existed under the circumstances. The concurring opinion found a major dispute due to the fact that the railroad's actions were admittedly outside the coverage of the contract, that is, neither the railroad nor the union could make a substantial claim that its position was justified by the existing contract. 471 F.2d at 380. The contract was silent. The instant situation is quite to the contrary. The contract is not silent with respect to crew boards. Section 8–B–1 is an express provision. Likewise, as previously demonstrated, it cannot be said that the railroad does not make a substantial claim that its position is justified by the existing contract. Accordingly, we are not constrained by our decision in United Transp. U., Lodge No. 621 v. Illinois Terminal R. Co.

In sum we hold that the instant case presents a section 3 dispute. All that is at issue is the interpretation of an existing contract provision. *See* Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). This dispute is the type of small or minor difference which seldom leads—or should lead—to a labor strike and for which the arbitration machinery of the Railway Labor Act was specifically designed. 325 U.S. at 724, 65 S.Ct. 1282. The district court failed to stay its hand

and erroneously entertained this action granting injunctive relief. Order of Railway Conductors, etc., v. Pitney, 326 U.S. 561, 567, 66 S.Ct. 322, 90 L.Ed. 318 (1946); Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 243, 70 S.Ct. 577, 94 L.Ed. 795 (1950).

The injunctive decree is reversed with direction to dismiss the action.

WILLIAM J. CAMPBELL, Senior District Judge (dissenting):

Section 8–B–1 of the Collective Bargaining Agreement provides that "crew boards showing the order in which the crews are to go out shall be maintained." For approximately forty years prior to the substitution of "print-out" sheets, the defendant had maintained a "crew board" in book form at its Colehour Yard. Effective February 1, 1969, the railroad unilaterally and without written notice removed this "crew board" and substituted print-out sheets in its place. The majority maintains that the railroad's bare assertion that print-out sheets are crew boards "is clearly within the realm of a good faith, reasonable interpretation of Section 8–B–1," and that what is here involved is no more than a dispute over contract interpretation. From this premise, the majority concludes that the instant case presents a section 3 dispute, thus depriving the district court of jurisdiction.

The district court entered detailed findings of fact regarding the characteristics of, and the information provided by the original crew board, and also made findings of fact regarding the inadequacy of the print-out sheets as a substitute. The majority has concluded that this "detailed analysis of what a crew board should show and how the print-outs failed to measure up to the expected criteria" should not have been

made. It is with this conclusion that I respectfully disagree.

I am convinced that the district court, following the Sixth Circuit's lead in United Transportation Union v. The Penn Central Company, 443 F.2d 131 (6th Cir. 1971), was correct in assuming jurisdiction for the purpose of conducting a full evidentiary hearing. The contract clearly requires that crew boards be maintained and there is no doubt that the railroad unilaterally discontinued use of the Colehour crew board in the form which had been employed for approximately forty years. A major dispute was thus created by the railroad's action *unless* the print-outs can be said to constitute a crew board, for if they do not, it follows that crew boards have not been maintained at the Colehour Yard since February 1, 1969.

The evidentiary hearing was therefore held not to "interpret" the contract, but rather to determine whether the railroad had initiated a unilateral change in the contract. This determination could only be made on the basis of a "detailed analysis" designed to ascertain whether the computer print-outs could reasonably be considered to constitute a crew board. I fail to see any basis for assuming the reasonableness of the railroad's bare assertion that the print-outs constitute a crew board, until such time as the district court has had an opportunity to determine the adequacy of the print-outs as a substitute for the crew board formerly maintained.

In essence, the district court found that the use of print-outs so thoroughly failed to achieve the purposes for which crew boards had formerly been maintained that the print-outs could not be said to constitute a crew board within the meaning of Section 8–B–1.[1] The district court therefore properly found

---

1. As the district court found in United Transportation Union v. Penn Central Company, *supra,* "The evidence does not reveal a mere dispute over the meaning of the language in the contract, for it clearly shows that the defendant's print-outs are not just another form of crew board. They are not what a crew board is, and they do not do what a crew board does." See, 443 F.2d at 132.

that the railroad had made a unilateral change in the contract by discontinuing use of the original crew board, thus creating a major dispute.

Accordingly, I would affirm.