**CHICAGO AND NORTHWESTERN TRANSPORTATION COMPANY,
Plaintiff-Appellee,**

v.

**UNITED TRANSPORTATION UNION,
et al., Defendants-Appellants.**

No. 80–1892.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 12, 1981.
Decided Aug. 12, 1981.

John J. Naughton, Chicago, Ill., for defendants-appellants.

I. Michael Greenberger, Shea & Gardner, Washington, D.C., for plaintiff-appellee.

Before SWYGERT, Senior Circuit Judge, PELL and WOOD, Circuit Judges.

PELL, Circuit Judge.

This appeal is from a permanent injunction entered by the district court which prohibited the United Transportation Union from striking against the Chicago and Northwestern Transportation Company (C&NW or Company) over the question of whether the Company could deny certain "meals en route" requests by crew members. The district court held that because the question involved the proper interpretation to be given a provision of the collective bargaining agreement between the parties, it concerned a "minor" rather than a "major" dispute. The court concluded, therefore, that the Union's threatened strike would be unlawful, and issued the injunction. The Union has appealed from that order.

I

For more than fifty years, a "meals en route" provision has appeared unchanged in the collective bargaining agreement between the C&NW and its Unions. The rules setting forth the provision state:

Rule 63(a). Reasonable time for meals en route will be allowed conductors, provided train dispatcher is notified.

Reasonable time for means en route will be allowed trainmen, provided conductor and train dispatcher are notified.

Rule 57. No fault will be found with firemen or helpers for taking a reasonable time for meals.

These rules allow crew members to stop and leave a train en route in order to go to a nearby restaurant for a meal. The members are given one hour to eat, but the stops often entail halting the train for up to two hours. If the members do not leave the train, they may, of course, eat on the train from meals they brought on board, and approximately 80% of the crew members utilize this method.

For the great majority of the time the meals en route provision has been in the parties' agreement, there has been little or no dispute as to its interpretation or application. However, beginning in approximately 1976, disputes have arisen that have led the parties to Special Adjustment Boards for resolution on at least three occasions.

In 1976, a dispute arose over the denial by train dispatchers of meal en route requests on a train between Chicago, Illinois and Adams, Wisconsin. The dispute concerned the fact that denials were issued either without any explanation or were based upon the delay entailed in honoring the request which the C&NW felt might lead to a violation of the Hours in Service law or rail congestion. After negotiations between the parties failed, they submitted the dispute to Special Adjustment Board 235 for resolution. The Board had been created by agreement between the C&NW and its unions pursuant to § 3 Second of the Railroad Labor Act, 45 U.S.C. § 153 Second, to decide disputes concerning the interpretation or application of their collective bargaining agreement. In its opinion, Award 2314, the Board noted that the lack of specificity in the meals en route provision was intentional because of the uncertain nature of roadwork, and that "reasonableness" was required in determining when requests should be honored. The Board stated:

We think that the language of the rule leaves considerable leeway for Carrier to consider its operational problems in determining where or when such reasonable time will be allowed, but Carrier has the obligation to make a serious effort to arrange its operations so that a reasonable time for meals en route is provided to its employees. It may well be that in certain situations, e. g., isolated instances caused by particular operating conditions (as held by some Boards), or a very short trip, the Carrier could fail to allow any meal time during the trip when requested

and not be in violation of the Rule. But not in the situation here.

The meals en route provision was again before Board 235 in 1977 after the C&NW issued a set of guidelines to its dispatchers regarding the handling of meals en route requests. The Union was dissatisfied with the ways the guidelines were applied and after negotiations between the parties failed, the Union authorized a strike against the Company. The C&NW obtained a temporary restraining order against the strike in federal district court, and pursuant to that court's order, the parties returned to the Board for resolution. Again the Board, in Award 2371, held that the Company had wrongly interpreted and applied the meals en route provision. However, as in Award 2314, the Board found that the Company interpretation was not the result of long-standing, flagrant, or deliberate violations of the rules by C&NW. Rather, the Board held that the Company had a "mistaken conception of what the rules require." The Board went on to state that its intent in Award 2371 was not "to deal with specific 'protests' as such, but to attempt a general interpretation of the rules which will, however, deal generally with most of the issues raised in the specific 'protests.'" The Board quoted at length from its earlier Award 2314 regarding the "reasonableness" required in applying the meals en route provision, and went on:

> ... except in certain circumstances,[2] the Carrier will be in violation of the rules if it does not so provide [the meal stops].

---

[2] [within Award 2371] We do not attempt a more precise definition of "exceptional." In Award 2314, we gave as examples "isolated instances caused by particular operating conditions (as held by some Boards), or a "very short trip." Award 108 of BLB–1459 on this property referred to "emergency or extenuating circumstances" in the same connection. Obviously, something more than normal operating problems is intended.

\*　\*　\*　\*　\*　\*

This interpretation will not settle all differences and misunderstandings between the parties over the meaning and application of the meals en route, but will eliminate great many disputes if honestly and conscientiously followed.

The dispute at issue in this case concerns certain meal requests made on the Company's "Falcon" trains operating between Chicago, Illinois and Omaha, Nebraska, and carrying, *inter alia*, United States mail. It is an express condition of the C&NW's mail carrying contract with the Federal Government that the Falcon trains will meet an "expedited schedule," which means making the entire trip in about 12 hours. Prior to January 7, 1980, few or no meal requests were received on the middle-leg of the Falcon trip, which is the leg from Clinton, Iowa to Boone, Iowa. After that date, however, there was a debouchment of requests. The Company contends that the increase was to protest the implementation of another agreement entered into by the parties in 1974. The substance of that agreement is not relevant to this case, but it is interesting to note that the 1974 agreement did not become effective until January 7, 1980.

Upon being confronted with the sudden increase in Falcon train meal requests, the C&NW denied the requests relying upon that portion of Award 2371 which allowed denials in "exceptional circumstances" including "instances caused by particular operating conditions ... or very short trips." The Company claimed that the "particular operating conditions" of the Falcon train, i. e., the mail contract with the Federal Government requiring expedited service, could not be maintained if the meal requests were granted. The Company also claimed that the middle-leg of the Falcon run, requiring "on duty time" by the employees of not more than 7 hours, was a "very short trip" within the meaning of Awards 2314 and 2371.

The numerous meal request denials again led the Union to threaten a strike. The Union contended that the expedited Falcon schedule was not an "exceptional circumstance" and did not incorporate "very short trips" as the Board had intended those terms to be interpreted. The Company obtained a temporary restraining order preventing the threatened strike, and eventual-

ly obtained the permanent injunction at issue here.

One other factual occurrence is important to this case. Prior to the hearing on the Company's motion for the injunction, the C&NW asked Board 235 for yet another interpretation of the meals en route provision. After the injunction was granted, but before the briefing was completed in this court, the Board issued its award, No. 2552, that requires granting meal stop requests on those runs that last longer than six and one-half hours. The Board relied upon its Award 2371, and characterized it as a "general interpretation of the rules dealing with meals en route," setting forth "some guidelines."

## II

Before we address the primary issue on this appeal, that is, whether the district court properly issued the injunction, we must first address appellant's motion to dismiss this appeal as moot. Appellant claims that because Award 2552 decided the disputes that were substantially the basis of its threatened strike, the strike has been called off and thus this litigation is moot.

Although this court has no wish to engage in passing upon moot cases or doing what in essence is rendering advisory opinions, we think this is not such a case. Here the threatened strike was based upon alleged violations of the Rules by the Company in addition to those involving the trains addressed in Award 2552. The Award, therefore, did not moot entirely the Union's threatened strike. The Union answers that it is "no longer interested in striking over the application of the meals en route provision on the Falcon trains in Iowa." It is well established, however, that the "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case...." *United States v. Concentrated Phosphate Export Ass'n. Inc.*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968).

This appeal also is not moot for a second reason. From the foregoing, it is clear that this case is moot only if the Union withdrew its threat because Award 2552 was binding upon them. The Award was binding only if the Board had jurisdiction under § 3 Second of the Railroad Labor Act. 45 U.S.C. § 153 Second; *Trainmen v. Chicago R. & I. R. Co.*, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957). The Board's jurisdiction, however, is the exact issue before this court because the Board had jurisdiction only if the dispute between the parties was indeed "minor." *Trainmen, supra* at 34, 77 S.Ct. at 637, 45 U.S.C. §§ 153 Second, 156. Thus, the ironic conclusion is that this appeal becomes moot only if we affirm the district court. For these reasons, the appeal cannot be dismissed as moot.

## III

The ultimate issue in this case for resolution only requires the application of well established principles. If the dispute is "major," subject to the terms of § 6 of the Railroad Labor Act, 45 U.S.C. § 156, the Union may strike to secure its position if after negotiation between the parties, mediation by the National Mediation Board, and, possibly, a review and report by an emergency board appointed by the President, a settlement is not reached. If, on the other hand, a dispute is deemed "minor" subject to § 3 Second of the Act, 45 U.S.C. § 153 Second, the parties must submit their differences to an adjustment board if they are not resolved by the normal grievance procedures. The jurisdiction of the Board in these circumstances is exclusive, *Andrews v. Louisville & Nashville R. Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), except that a strike over such "minor" disputes violates the Railroad Labor Act and may be enjoined by a federal district court. *Locomotive Engrs. v. Louisville & Nashville R. Co.*, 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); *Trainmen v. Chicago R. & I. R. Co., supra.*

The distinction between "major" and "minor" disputes has been the subject of substantial litigation. Generally, "major" disputes are ones evolving from the bargaining process for a new or altered contract. *Trainmen, supra*, 353 U.S. at 33, 77 S.Ct. at 636; *De La Rosa Sanchez v. East-*

*ern Airlines, Inc.*, 574 F.2d 29, 31 (1st Cir. 1978). They arise out of the contract formation process and concern rates of pay, rules, or working conditions. *UTU v. Penn. Central Trans. Co.*, 505 F.2d 542, 543 (3d Cir. 1974), *quoting Baker v. UTU*, 455 F.2d 149, 154 n.11 (3d Cir. 1971). They look to the future acquisition of rights as opposed to the assertion of rights claimed to have vested in the past. *Elgin, Toledo & Eastern R. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed.2d 1886 (1945); *Gibbons v. UTU*, 437 F.Supp. 646, 649 (N.D.Ill.1977). In a major dispute, the conflict cannot be resolved by reference to an existing agreement. *Chicago, Milw., St. P. & Pac. R. Co. v. Bro. of Loc., F. & Engnr's*, 397 F.2d 541, 543 (7th Cir. 1968), *cert. denied*, 393 U.S. 1022, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969), *quoting Hilbert v. Pennsylvania R. Co.*, 290 F.2d 881, 882 (7th Cir. 1961), *cert. denied*, 368 U.S. 900, 82 S.Ct. 174, 7 L.Ed.2d 96.

"Minor" disputes, on the other hand, are controversies over the meaning of an existing collective bargaining agreement, *Trainmen, supra*, 353 U.S. at 33, 77 S.Ct. at 636; *McKinney v. Int'l Ass'n of M.&A.W.*, 624 F.2d 745 (6th Cir. 1980). A "minor" dispute presumes the existence of a contract and does not involve an effort to bring about a formal change in the agreement's terms. *Elgin, supra*, 325 U.S. at 723, 65 S.Ct. at 1289. It involves the interpretation or application of the already existing agreement, *UTU v. Penn. Cent. R. Co., supra* at 543; *Chi., Milw., St. P. & Pac. R. Co., supra* at 543; *Hendley v. Central of Ga. R. Co.*, 609 F.2d 1146, 1150 (5th Cir. 1980), *cert. denied*, 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981).

■ In this case, we have little difficulty in determining that the underlying dispute between the parties was "minor." Clearly, the dispute concerns whether the expedited schedule of the Falcon trains is an "exceptional circumstance" so as to make the requirement of off-train meal time "unreasonable," or whether the intra-Iowa leg of the Falcon trip was "very short" as those terms are used in the agreement between the parties. The question is one of contract interpretation and is thus "minor." In those situations involving a threatened strike over a minor dispute, the district court is clearly proper in issuing the injunction. *Trainmen, supra*, 353 U.S. at 42, 77 S.Ct. at 641; *Loc. Engnr's supra; Chi., Milw., St. P. & Pac. R. Co., supra* at 543.

The only difficulty this case presents is that the Union claims that the contract so obviously does not allow an exception for service such as the Falcon trains that, in effect, the Company is attempting unilaterally to change the terms of the agreement. The Union concludes that the dispute is "major" and the injunction was inappropriate. Similar arguments have been addressed by many courts, including our own, and the applicable law is clear. In such a situation, the contract-interpretation dispute is to be deemed "minor" unless the claim that the contract provides for the occurrence is "frivolous." *UTU v. Baker*, 499 F.2d 727, 730 (7th Cir. 1974), *cert. denied*, 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 66. Other courts have adopted similar and equivalent tests. In *UTU v. Penn. Central Trans. Co., supra*, for example, the court adopted a test that upholds the claim of contract support unless the claim is "obviously insubstantial," and summarized the applicable law:

> To our knowledge, the Fourth and Tenth Circuits have not decided the question. The rest of the circuits have adopted a test either identical or similar to the one used here. *Airlines Stewards Ass'n v. Caribbean Atl. Airlines, Inc.*, 412 F.2d 289 (1st Cir. 1969) (not "obviously insubstantial"); *Rutland Ry. v. Brotherhood of Locomotive Eng'rs*, 307 F.2d 21 (2d Cir. 1962), cert. denied, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963) (agreement, "reasonably interpreted, may recognize implicitly"); *REA Express Inc. v. Brotherhood of Ry. Clerks*, 459 F.2d 226 (5th Cir.), cert. denied, 409 U.S. 892, 93 S.Ct. 115, 34 L.Ed.2d 149 (1972) ("arguable"); *Local 1477 United Transp. Union v. Baker*, 482 F.2d 228 (6th Cir. 1973) (not "obviously insubstantial"); *United Transp. Union v. Baker*, 499 F.2d 727 (7th Cir. 1974)

(not "frivolous"); *United Transp. Union v. Burlington Northern, Inc.*, 458 F.2d 354 (8th Cir. 1972) ("reasonably susceptible"); *Southern Pac. Transp. Co. v. United Transp. Union*, 491 F.2d 830 (9th Cir.), cert. denied, 416 U.S. 985, 94 S.Ct. 2389, 40 L.Ed.2d 762 (1974) ("reasonabl(y) susceptible"); *IBEW v. Washington Terminal Co.*, 154 U.S.App.D.C. 119, 473 F.2d 1156 (1972), cert. denied, 411 U.S. 906, 93 S.Ct. 1530, 36 L.Ed.2d 195 (1972) ("arguably").

505 F.2d 544–45, n.5.

The Company's claims in this case are clearly not "frivolous" or "obviously insubstantial" as is substantiated by the language in Awards 2314 and 2371. Award 2552, in fact, defined a "short trip" as one lasting up to six and one-half hours. The Company argued for a seven-hour limitation.[1] This one-half hour difference strongly militates against the conclusion that the Company's interpretation of the contract was "frivolous." The evidence supports the district court's conclusion that the Company was attempting to comply with Awards 2314 and 2371. The fact that the parties have been to the Board before regarding this contract provision, or that the dispute involves more than one employee, does not alter this conclusion. *See Elgin, supra* and *Bro. of Loc. Engnr's, supra.*[2] We hold, therefore, that the dispute concerns the proper interpretation to be given the collective bargaining agreement, and that the dispute was therefore "minor." Accordingly, the district court's grant of the injunction against the threatened strike is affirmed.

AFFIRMED.

---

1. The Union, on the other hand, argued for a six-hour limitation.

2. We also do not find error in the district court's refusal to address certain unverified meal request complaints in light of the conflicting evidence regarding these complaints presented to the court.