AMERICAN TRAIN DISPATCHERS ASSOCIATION, Plaintiff,

v.

NORFOLK AND WESTERN RAILWAY COMPANY, Defendant.

Civ. No. F 85–383.

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 1, 1985.

On Motions for New Trial and to Amend Nov. 14, 1985.

Carl M. Miller, Miller & Miller, New Haven, Ind., Gordon P. MacDougall, Washington, D.C., for plaintiff.

Anthony S. Benton, Stuart & Branigin, Lafayette, Ind., Thomas W. Yoder, Livingston, Dildine, Haynie & Yoder, Fort Wayne, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on plaintiff's Motion for Preliminary Injunction, filed September 9, 1985. A status conference was held on September 11, 1985, at 9:00 a.m. Defendant filed its brief in opposition to the plaintiff's motion for a preliminary injunction on September 20, 1985. The defendants argue that the district court is without jurisdiction because of the policies embodied in the Railway Labor Act. This court interprets this argument as a motion to dismiss. Plaintiff's reply memorandum was filed on September 24, 1985. Both parties have filed supporting affidavits. For the following reasons, plaintiff's motion for a preliminary injunction will be denied and defendant's motion to dismiss will be granted.

## Discussion

Plaintiff, American Train Dispatchers Association (ATDA) seeks preliminary and permanent injunctive relief from changes in work assignment duties by the defendant, Norfolk and Western Railway Company (N & W) implemented pursuant to a notice to ATDA issued August 27, 1985.

N & W has installed at various locations defective equipment detectors designed to alert N & W personnel when a train in operation has a hot bearing, is dragging equipment, or is losing a wheel. The output generated by the defective equipment detectors is transmitted over open wire lines or telephone lines to ink pen chart recorders at central locations which produce a tape of the information. At Fort Wayne, output from fourteen defective equipment detector locations is received and displayed on tapes ("recorder tapes") produced by ten defective equipment chart recorders located in the N & W Operations Center. These ink pen chart recorders are installed, maintained and repaired by members of the N & W Signal Department. The recorder tapes are removed from the defective equipment chart recorders, and are then reviewed and evaluated to determine whether a train at a given location has an equipment defect.

Until late August, 1985, the task of removing the recorder tapes (which includes the job of writing the time and location of the equipment monitored onto the recorder tape), as well as the review and evaluation

of the tapes, was performed by employees known as train dispatchers, members of the ATDA bargaining unit.

On August 27, 1985, N & W issued a notice (inadvertently dated September 27, 1985) advising ATDA that the recorder tapes would henceforth be removed by N & W Operator/Clerks ("Operators") who would then immediately deliver them to the Assistant Chief Train Dispatcher. Operators are not train dispatchers, and are not represented by ATDA. The Assistant Chief Train Dispatcher would then review the tapes and notify train dispatchers whether or not exceptions existed on the tapes. The Assistant Chief Train Dispatcher, based upon his evaluation of the tape, either clears a train to proceed ahead or orders it halted to be inspected for defective equipment.

ATDA responded to defendant's August 27, 1985 notice by orally advising N & W that this change would be in violation of the July 24, 1978 Implementing Agreement (Agreement) because the monitoring of recorder tapes was given in part to non-ATDA personnel. N & W countered by advising ATDA that the monitoring of the recorder tapes was still being performed by ATDA bargaining unit personnel.

ATDA sent N & W a telegram on August 28, 1985, stating its position that the railroad was in violation of Article XI[1] of the Agreement and characterizing the matter as a "major dispute" under the Railway Labor Act. On the next day N & W sent a responsive telegram indicating that the Train Dispatchers continued to monitor the tapes in question and the fact that ATDA relied on Article XI of the Agreement constituted clear recognition that no "major dispute" existed. This lawsuit followed.

In its motion for a preliminary injunction, ATDA contends that N & W's transfer of the work of removing the recording tapes from the defective equipment monitors constitutes a violation of the Agreement. ATDA argues that the violation is so egregious that it constitutes a "major" dispute warranting immediate injunctive relief.

N & W argues that the nature of the complaint is a "minor" dispute within the meaning of the Railway Labor Act. N & W further contends that since the interpretation and the application of the collective bargaining agreement are required to determine the merit of the dispute, this dispute is subject to the *exclusive* arbitration jurisdiction of the National Railroad Adjustment Board. After ATDA filed this action, N & W, in accordance with the Railway Labor Act, filed its notice with the National Railway Adjustment Board, Third Division, of its intention to present an *ex parte* submission with respect to this unadjusted dispute.

This dispute is governed by the Railway Labor Act, 45 U.S.C. § 151 *et seq.* Designed to avoid interruptions to commerce caused by labor disputes while seeking to "provide for the prompt and orderly settlement of all disputes," § 151a, the Act sets forth a two-tiered structure for resolution of labor disputes. If a dispute is considered "major," the parties are required to negotiate, § 152, and if that fails, to go to mediation under the auspices of the National Mediation Board, § 156. If mediation fails, and the Board adjudges the controversy a threat that would substantially interrupt interstate commerce, the President shall be notified, and at his discretion, an emergency board may investigate the dispute. § 160. During the time of mediation and investigation by an emergency board, no change in rules or working conditions may be made. §§ 156, 160.

■ Minor disputes, on the other hand, are settled through the mechanism of § 153 First or § 153 Second. If initial ne-

---

**1.** Article XI of the Agreement provides in pertinent part:

In the application of existing rules agreements it is the intent of the parties that items of work and duties now being performed by train dispatchers ... will not be transferred to other classes of employees or officers (excluding Chief Train Dispatchers).

Said items include ... [the] work of monitoring defective equipment detectors presently performed by the train dispatchers in the ... Fort Wayne Dispatcher's Office[ ].

gotiation fails, the dispute proceeds directly to arbitration by the National Railway Adjustment Board, 45 U.S.C. § 153, First, or a special board of adjustment (Public Law Board), 45 U.S.C. § 153, Second. *United Transportation Union v. Penn Central Transportation*, 505 F.2d 542 (3d Cir.1974). Only in limited instances can there be judicial review of such arbitration awards. 45 U.S.C. § 153, First (p). Federal court intervention into minor disputes is limited to: enjoining a union from striking a carrier while minor dispute procedures are being exhausted, *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Railroad*, 363 U.S. 528, 534, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1379 (1960), and to preserving the jurisdiction of a Board of Adjustment over a minor dispute which has been submitted to it, *Southern Railway v. Brotherhood of Locomotive Firemen & Engineers*, 384 F.2d 323 (D.C.Cir.1967). The case before this court involves neither of these exceptions. If there is no judicial review as provided, the Railway Labor Act requires that such decisions be final and binding. 45 U.S.C. § 153, First (m).

The distinction between "major" and "minor" disputes has been the subject of substantial litigation. Generally, "major" disputes evolve from the bargaining process for a new or altered contract. *Trainmen v. Chicago R. & I. R. Co.*, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); *Elgin, Joliet & Eastern Railroad v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1946); *Chicago & Northwestern Trans. Co. v. United Trans. Union*, 656 F.2d 274, 277–78 (7th Cir.1981). They look to the future acquisition of rights as opposed to the assertion of rights claimed to have vested in the past, *Elgin*, 325 U.S. at 723, 65 S.Ct. at 1290, and cannot be resolved by reference to an existing agreement. *Chicago & Northwestern Trans. Co.*, 656 F.2d at 278.

"Minor" disputes, on the other hand, are disputes over the meaning of an existent collective bargaining agreement, *Trainmen*, 353 U.S. at 33, 77 S.Ct. at 636. A minor dispute presumes the existence of a contract, *Elgin*, 325 U.S. at 723, 65 S.Ct. at 1290, and involves the interpretation of the terms of that agreement. *Chicago and Northwestern Trans. Co.*, 656 F.2d at 278.

A common thread about contract interpretation has been applied by various courts as an aid to determining whether a "major" or "minor" dispute is present. As noted before, the Seventh Circuit Court of Appeals held in *Chicago* and *Northwestern Transportation Company v. United Transportation Union*, 656 F.2d 274 (7th Cir.1981), that determinations that involve the interpretation of an existing collective bargaining agreement are "minor disputes." The Eighth Circuit declared that "the test to be applied is that if the contract is reasonably susceptible to the interpretation sought by both the carrier and the union, the dispute is minor and within the exclusive adjustment jurisdiction." *United Transportation Union v. Burlington Northern, Inc.*, 458 F.2d 354, 357 (8th Cir.1972). In *United Transportation Union General Committee of Adjustment v. Baker*, 499 F.2d 727, 730 (7th Cir.), *cert. denied*, 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 66 (1974), the Seventh Circuit quoted with approval the test enunciated by the District of Columbia Circuit in *Southern Railroad Co. v. Brotherhood of Locomotive Fire & Enginemen*, 384 F.2d 323, 327 (D.C.Cir.1967):

> We think that, where the railroad asserts a defense based upon the terms of the existing collective bargaining agreement, the controversy may not be termed a "major" dispute unless the claimed defense is so obviously insubstantial as to warrant the inference that it is raised with intent to circumvent the procedures prescribed by § 6 for alteration of existing agreements.

*Baker* presents a similar factual pattern to the present case. The carrier, Penn Central, had substituted a computer printout to replace crew boards that had been maintained pursuant to a term in a collective bargaining agreement. The change consisted primarily of discontinuing the use of mimeographed and handwritten crew

sheets and substituting in their place computer print-out lists showing the standing of crews and extra men. The union sought an injunction complaining that the substitution was a unilateral change of the collective bargaining agreement constituting a major dispute. The railroad argued that the instituted change was authorized under the collective bargaining agreement, and at the most it was a "minor" or Section 3 dispute under the Railway Labor Act. The Seventh Circuit reversed the injunction that the district court had granted. After reviewing the facts, the court stated:

> The fundamental inquiry in deciding whether to assume jurisdiction to grant injunctive relief (to maintain the status quo) is not to interpret the contract; rather, the Court must decide whether the asserted contractual defense (claim or a "minor" dispute) is frivolous.

*Baker,* 499 F.2d at 730. The court in *Baker* also noted that the district court had conducted a detailed analysis of the merits of the case, but had "failed to scrutinize the critical question of whether the railroad's contract claim is merely colorable." *Baker,* 499 F.2d at 731. The Seventh Circuit has carried forward the rule of *Baker* recently in *Atchison, Topeka & Santa Fe v. United Trans. Union,* 734 F.2d 317, 321 (7th Cir.1984), when the court said *"[w]here the parties disagree as to whether the existing contract permits the carrier's actions, the dispute is minor unless the carrier's claims of contractual justification are 'frivolous' or 'obviously insubstantial.'"* (Emphasis supplied).

■ In considering the present case in light of the *Baker* test, it is apparent that the railroad's contractual defense, namely, that the substitution of Operators to remove completed recorder tapes from the defective equipment detector locations is not a violation of the Agreement, is not frivolous. Central to N & W's and ATDA's positions is the interpretation of the existing agreement, specifically the term "monitor" as used in Article XI. ATDA interprets "monitoring" as including the process of removing the recorder tapes from the defective equipment detectors. N & W, on the other hand, views "monitoring" as the process of reviewing and evaluating the recorder tape, a process clearly left to the Assistant Chief Train Dispatcher. Such an interpretation is not frivolous if the parties intended "monitor" to mean warning and instructing train crews as to defective equipment. This definition is one of several ways to define "monitor"; ATDA's alternative definition in its reply brief suggests that the dispute here is about a term of the contract, both as to its definition and scope. Disputes about a term of the collective bargaining agreement are, as noted above, clearly minor disputes.[2]

■ The court therefore finds that this is a "minor" dispute under the provisions of the Railway Labor Act. This finding has important consequences for the jurisdiction of this court. Under the Act, minor disputes must go to arbitration with either the National Railway Arbitration Board, § 153 First, or special boards of adjustment, § 153 Second. The Supreme Court has made it clear that the jurisdiction of the National Railway Adjustment Board is exclusive, *Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 322, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972), so that federal courts are preempted from hearing a minor dispute prior to the exhaustion of remedies with the Board. Thus, actions in federal court are subject to dismissal while the dispute has not yet made its way through the Board. *See Spencer v. Missouri Pacific R. Co.,* 743 F.2d 627, 628 (8th Cir.1984), *cert. denied,*

**2.** ATDA's argument that the court need not reach the issue of the definition of "monitor" is mysterious. ATDA claims that Article XI is not limited to monitoring the recording tapes, but includes other duties as well. However, the dispute here is about whether "monitoring" includes removing the recorder tapes from the defective equipment detectors—it does not implicate other parts of Article XI or the Agreement. ATDA's reference to Article XI proves that the dispute here is about an interpretation of the Agreement, which the Seventh Circuit holds is a minor dispute. *Atchison, Topeka & Santa Fe,* 734 F.2d at 321. Thus, even if some other aspect of Article XI was involved here, the result would be the same.

— U.S. ——, 105 S.Ct. 912, 83 L.Ed.2d 925 (1985); *Minehart v. Louisville & Nashville R.R. Co.*, 731 F.2d 342, 344–45 (6th Cir. 1984); *Dorsey v. Chesapeake & Ohio Ry. Co.*, 476 F.2d 243, 254 (4th Cir.1973); *Adams v. United Airlines, Inc.*, 578 F.Supp. 26, 28 (N.D.Ill.1983). N & W's arguments concerning the exclusive jurisdiction of the Board are correct, and interpreting them as a motion to dismiss, the court will grant the motion. Given the fact that the Board's jurisdiction over minor disputes preempts federal court jurisdiction, the motion for a preliminary injunction must be denied.

For the reasons stated above, plaintiff's Motion for a Preliminary Injunction is hereby DENIED and defendant's Motion to Dismiss is hereby GRANTED.

## ON MOTIONS FOR NEW TRIAL AND TO AMEND

This matter is before the court on plaintiff's ("ATDA") motions for a new trial, to amend the court's October 1, 1985 findings, and to amend its complaint. The motions have been fully briefed. For the following reasons, the motion to amend the court's findings will be granted in part and denied in part, and the motions for a new trial and to amend the complaint will be denied.

This cause arises out of changes in the assignment of work duties by the defendant ("N & W") implemented pursuant to a notice to ATDA issued August 27, 1985. That notice provided that fourteen defective equipment detectors would have their printers located in the Fort Wayne, Indiana Operator's Office, and that when a train passed over one of the detectors, an Operator/Clerk would take the recorder tape produced by the printer and present it to the Assistant Chief Train Dispatcher for review, and the Assistant Dispatcher would then notify the Train Dispatchers whether any problems were noted on the recorder tape. According to the complaint, the task of removing the recorder tapes was previously done by personnel known as train dispatchers, who were in the ATDA bar-

gaining unit. Operator/Clerks are not in the ATDA unit.

ATDA objected to this change in work duties, and notified N & W of its objection. ATDA then filed this action seeking a preliminary and permanent injunction against N & W. In its order of October 1, 1985, this court denied the request for injunctive relief and granted N & W's motion to dismiss on the grounds that this is a "minor" dispute under the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, and therefore within the exclusive jurisdiction of the National Railway Adjustment Board. The court's ruling was based in large part on the fact that the collective bargaining agreement between ATDA and N & W contained language in Article XI which appeared to govern the assignment of duties of the train dispatchers, so that resolution of this dispute involved an interpretation of the collective bargaining agreement, the classic definition of a "minor" dispute. ATDA has now filed motions seeking amendments in the court's findings, a new trial and amendments to the complaint.

### Motion to Amend Court's Findings

■ ATDA seeks two changes in the language of the court's October 1, 1985 order, changes which ATDA claims can be made without changing the result of the October 1, 1985 order. Motions to amend a court's findings are governed by Rule 52(b) of the Federal Rules of Civil Procedure. These motions are intended to correct manifest errors of law or fact or to present newly discovered evidence; they are not intended to be a vehicle for obtaining a rehearing or the relitigation of old matters. *Davis v. Matthews*, 450 F.Supp. 308 (E.D.Cal.1978); *Evans, Inc. v. Tiffany & Co.*, 416 F.Supp. 224, 244 (N.D.Ill.1976). *See* 5A *Moore's Federal Practice* ¶ 52.11[3].

The first amendment ATDA seeks is to add the phrase "but not limited to" to the court's quotation of the language of Article XI. Apparently, ATDA believes that the court focused only on the change in the monitoring of the defective equipment detectors in defining this dispute; ATDA em-

phasizes in its brief that its complaint against N & W is about the assignment of work duties in the August 27 notice, and not just the reassignment of monitoring duties. Thus ATDA seeks this amendment so as to "make it clear that the preservation of work and duties is not limited to 'monitoring,' however defined, but embraces all of the work and duties which were being consolidated into the Fort Wayne train dispatcher's office, pursuant to the 'implementing agreement' consolidating former Wabash and Nickel Plate facilities." ATDA Memorandum in Support, p. 2.

■ ATDA does not state what significance this clarification would provide. The apparent premise behind ATDA's argument is that by defining the change of work duties in more global terms, the nature of the dispute changes from "minor" to "major." As will become clearer in the discussion of the motion for a new trial later in this order, the fact that other duties may have been changed in addition to the monitoring of the recorder tapes does not alter the nature of the dispute because its resolution depends upon the interpretation of Article XI of the collective bargaining agreement. The court's deletion of the "but not limited to" language in setting forth Article XI served only to focus on the language relating to monitoring of the defective equipment detectors, as that is the only work duty change identified in the complaint. Because the analysis is the same whether there is one or several work duties involved here, the court concludes that the proposed change in the October 1 order would have no effect on its decision because this reference to the language of Article XI only reinforces the conclusion that this dispute is minor. The court therefore finds no need to amend its order on this point.

The second requested change in the October 1 order involves the court's recitation of the facts leading up to this lawsuit. This court stated that ATDA responded to N & W's August 27 notice by advising N & W that the change would be in violation of the Agreement, while ATDA points out that it informed N & W that it believed that change violated the Railway Labor Act. An examination of the underlying facts, as set forth in the affidavits of Robert Rafferty and John Gereaux, as well as the telegram from Rafferty to Gereaux attached as exhibit 1 to Gereaux's affidavit, reveals that ATDA's response to the August 27, 1985 notice by N & W was, in pertinent part, as follows:

> In view of the clear provisions contained in Article XI of the July 24, 1978 Implementing Agreement ... prohibiting the transferring of these monitoring duties to other classes of employees, such action is in violation of Section 2 Seventh and Section 6 of the Railway Labor Act, and effectively constitutes a major dispute.

In setting forth the facts, the court relied on the reference to Article XI in stating that ATDA alleged a violation of the collective bargaining agreement, while ATDA seeks to emphasize the last part of this quoted language to state that it claimed a violation of the Railway Labor Act.

■ ATDA fails to explain the significance of the fact that it believed the Act and not the Agreement was violated. The premise behind the argument is that violations of the Act are major disputes, which is not true. The sections referred to in the ATDA response telegram—Section 2 Seventh, 45 U.S.C. § 152 Seventh, and Section 6, 45 U.S.C. § 156—prohibit changes in working conditions or rules. Yet what the rules or conditions are, and whether they are changed, is a function of what is permitted under the collective bargaining agreement, and the interpretation of that agreement would make a dispute "minor" for purposes of jurisdiction. Thus, the finding concerning what ATDA told N & W is irrelevant to the ultimate outcome of this case. However, the court will grant the motion, and therefore will order the following revisions to the October 1, 1985 order:

> On page 3, the first full paragraph, lines 2–3 [page 944]: change the language "violation of the July 24, 1978

Implementing Agreement" to read "violation of the Railway Labor Act";

On page 3, second full paragraph, lines 2–3 [page 944]: change "in violation of Article XI of the Agreement" to read "in violation of the Railway Labor Act," with footnote 1 to appear after the term "Article XI" in lines 6–7 of that same paragraph; and

On page 4, line 3 [page 944]: change the word "Agreement" to read "Railway Labor Act."

However, ATDA's suggested revision to page 8 of the order is unnecessary and will not be implemented.

### Motion for a New Trial

■ Motions for a new trial are governed by Rule 59(a) of the Federal Rules of Civil Procedure. Of course, an essential prerequisite of a request for a *new* trial is that there be an *old* trial—that is, a motion for a new trial is inappropriate when there has been no trial in the case. *See Davis v. Matthews*, 450 F.Supp. 308, 318 (E.D.Cal. 1978). *See generally* 11 Wright & Miller, *Federal Practice and Procedure*, §§ 2805, 2808–09; 6A *Moore's Federal Practice* ¶¶ 59.05, 59.07, 59.12. Thus, the only possible motion that ATDA could raise in this situation is a Rule 59(e) motion.

Under Rule 59(e), a movant in effect asks the court to reconsider its judgment and correct errors of law. *A.D. Weiss Lithograph Co. v. Illinois Adhesive Products Co.*, 705 F.2d 249, 250 (7th Cir.1983); *United States Labor Party v. Oremus*, 619 F.2d 683, 687 (7th Cir.1982). Rule 59(e) provides a mechanism by which the trial judge may alter, amend, or vacate the judgment. *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1249 (9th Cir.1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983).

As the court interprets ATDA's motion, the judgment should be altered or amended because the premise behind ATDA's complaint is that N & W's changes in the work duties of train dispatchers set forth in the August 27, 1985 notice constitutes a unilat-

eral change in the collective bargaining agreement ("Agreement"). According to Article XI of the Agreement

> In the application of existing rules agreements it is the intent of the parties that items of work and duties now performed by train dispatchers represented by the American Train Dispatchers Association ... will not be transferred to other classes of employees or officers....
>
> Said items include, but are not limited to ... [the] work of monitoring defective equipment detectors presently performed by train dispatchers in ... the Fort Wayne dispatcher offices.

Given this court's earlier ruling that minor disputes, which involve the interpretation of an existing collective bargaining agreement, cannot be brought within the jurisdiction of a district court, ATDA must be arguing that an attempt to unilaterally change the terms of an agreement is a "major" dispute, therefore justifying a trial before this court.

■ The court finds ATDA's position illogical. The premise of ATDA's complaint is that Article XI prohibits the assignment of work duties held by the train dispatchers to other classes of employees. N & W's assignment of the task of collecting the recorder tapes and turning them over to the Assistant Chief Train Dispatcher is governed by the restriction of Article XI. The dispute here is simply whether or not N & W violated the agreement through this reassignment of duties, a dispute which involves the interpretation of Article XI itself, and whether the reading of the recorder tapes by the Assistant Chief Dispatcher can be interpreted as "monitoring" the detectors. This is not an attempt to amend the Agreement, as ATDA contends, because to adopt such a view would mean that any violation of a collective bargaining agreement would constitute an attempt to change or amend the agreement, thereby making the dispute major. Such a view would make minor disputes a nullity, in direct contradiction to the voluminous case law which recognizes the existence of minor disputes. This is, quite simply, a dis-

pute about whether N & W's change in work duties complies with Article XI, which involves the interpretation of the collective bargaining agreement. Under Seventh Circuit case law, disputes which involve interpretation of the Agreement are minor disputes, within the exclusive jurisdiction of the National Railway Adjustment Board. *Atchison, Topeka & Santa Fe v. United Trans. Union*, 734 F.2d 317, 321 (7th Cir. 1984).

ATDA attempts to argue that N & W is attempting to change work duties other than the monitoring of the defective equipment recorders, as though that fact makes its case any stronger. However, even if the August 27 notice reassigned several duties formerly performed by train dispatchers to other personnel, the result here is the same. The effect of Article XI is to contractually assure that the duties performed by the train dispatchers do not get reassigned to someone else. The dispute here is whether the August 27 notice reneges on that agreement; the way to resolve the dispute is to look to Article XI and see whether the particular duty was performed by the train dispatchers and whether the August 27 notice reassigns it to someone else. This dispute resolution process is the same no matter how many duties were reassigned; because the process involves interpreting the collective bargaining agreement, this is a minor dispute. ATDA's argument here may suggest that there is more than one minor dispute, but ATDA has offered no authority for the proposition that several minor disputes can somehow combine to make one major dispute. Simply stated, the court lacks jurisdiction over this case because this involves only minor dispute(s).

Finally, ATDA states that the October 1 order contains a "cryptic" footnote commenting on ATDA's assertion that the court does not need to consider N & W's definition of "monitor." The message of the footnote is abundantly clear—ATDA's position that other duties have been reassigned does not and cannot make this a major dispute. As this order repeatedly

states, the argument refers to Article XI's prohibitions on job reassignment, and thus ATDA's position is *inextricably tied to the interpretation of Article XI and the Agreement.* ATDA's attempts to obfuscate that issue by calling N & W's actions an attempt to amend the collective bargaining agreement do not alter that obvious conclusion.

Thus, ATDA's motion does not convince this court that this case, even in its proposed amended form, is anything other than a minor dispute subject to the exclusive jurisdiction of the National Railway Adjustment Board. Therefore, the motion for a new trial, interpreted as a Rule 59(e) motion to alter or amend the judgment, must be denied.

### *Motion to Amend the Complaint*

ATDA seeks to amend its complaint in order to make clear that it claims N & W altered work duties other than the monitoring of defective equipment detector recorder tapes. Because the court will deny the motion for a new trial/motion to alter or amend the judgment, the motion to amend must be denied as moot because this order in effect reaffirms the earlier finding that this court has no jurisdiction over this dispute. In addition, the argument above makes clear that the proposed amendments do not alter that conclusion, because the multiple reassignment of work duties only leads to a multiplicity of minor disputes, all within the exclusive jurisdiction of the National Railway Adjustment Board. Therefore, the motion to amend the complaint will be denied.

### *Conclusion*

For the reasons stated above, the plaintiff's motion to amend the court's October 1, 1985 findings is hereby GRANTED. The October 1, 1985 order in this case is hereby AMENDED as follows:

On page 3, the first full paragraph, lines 2–3 [page 944]: change the language "violation of the July 24, 1978 Implementing Agreement" to read "violation of the Railway Labor Act";

On page 3, second full paragraph, lines 2–3 [page 944]: change "in violation of Article XI of the Agreement" to read "in violation of the Railway Labor Act," with footnote 1 to appear after the term "Article XI" in lines 6–7 of that same paragraph; and

On page 4, line 3 [page 944]: change the word "Agreement" to read "Railway Labor Act."

Plaintiff's motion for a new trial and the motion to amend the complaint are hereby DENIED.